609 So.2d 722 (1992)
Michael L. BISHOP and Deborah L. Bishop, Appellants,
v.
FIRST NATIONAL BANK OF FLORIDA, INC., etc., et al., Appellees.
No. 91-2548.
District Court of Appeal of Florida, Fifth District.
December 4, 1992.
*723 Raymonda A. Chakhtoura of Benjamin Y. Saxon, P.A., Melbourne, for appellants.
Ted R. Manry, III and David J. Kadyk of MacFarlane Ferguson, Tampa, for appellees.
GRIDLEY, W.C., Associate Judge.
Michael L. Bishop and Deborah L. Bishop, plaintiffs below, appeal from an adverse summary judgment in a personal injury-negligence action decided in favor of the landowners, First National Bank of Florida, Inc., as Trustee, Lykes Development Corp., and Lykes Brothers, Inc. Michael Bishop was injured when he swung from a rope swing located on the landowners' property, dived into the Weeki Watchee River and struck his head on the bottom of the river or on an unknown submerged object.
According to the record on appeal, Bishop and two companions rented a boat from a location unassociated with the landowners and proceeded up the Weeki Watchee River to an area where they saw ten to fifteen people playing in the water, having mud fights and swinging from a ledge on a rope attached to a tree limb. The tree is located on the landowners' property. Bishop watched six or seven people swing on the rope into the water. He determined that the water in the landing area was over his head and he noticed that no one had any problem in entering the water in the landing area. He then took a turn swinging and entered the water at approximately the same place as the others. He entered the water in a dive-jump position and when he resurfaced he had a laceration on his head and numbness in his legs.
The landowners own 260 acres of undeveloped land surrounding the bank of the river where the accident occurred. The land is bounded by a chainlink fence and the river. The landowners have spent considerable time and money in trying to keep people off the property; however, people frequently trespass upon it because this particular location is accessible by boat from the river. Although "No Trespassing" signs are normally posted in this area, there were none posted on the date of the accident. The landowners were aware that rope swings are continually put up by persons traveling on the river and the landowners routinely looked for such rope swings and removed them.
Bishop submits that his status on the premises should be elevated to that of an invitee. Specifically, he claims that he was either a "public invitee" who was impliedly invited on the premises, or a "licensee by invitation."[1]See Wood v. Camp, 284 So.2d 691 (Fla. 1973). See also Restatement (Second) of Torts § 332 (1965);[2] Fla. *724 Std.Jury Instr. (Civ.) 3.2(a).[3] We disagree.
The two variations of invitee status, namely, "public invitee" and "licensee by invitation", are mixed together by Bishop in his argument as if they were the same. However, they were developed for different reasons which should be recognized in order to apply this technical area of the law in a logical and practical manner.
The "public invitee" category was adopted in Post v. Lunney, 261 So.2d 146 (Fla. 1972). In Lunney, the court replaced the mutual or economic benefit test with the invitation test set forth in section 332 of the Restatement (Second) of Torts. The "public invitee" paragraph of section 332 was introduced to broaden the invitee category to cover persons who were invited on the premises, without any business purpose connection, as a member of the public for a purpose for which the land is held open to the public. In explaining the invitation test, the court in Smith v. Montgomery Ward & Co., 232 So.2d 195 (Fla. 4th DCA 1970), stated:
the invitation test bases "invitation" on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe that the premises were intended to be used by visitors for the purpose which this entrant was pursuing, and that such use was not only acquiesced in by the owner or possessor, but that it was in accordance with the intention and design with which the way or place was adopted or prepared.
Smith, 232 So.2d at 198. Further, "[w]hen premises are thrown open to the public, assurances of reasonable care are ordinarily given." W. Prosser, Law of Torts § 61 (3d ed. 1964); Lunney v. Post, 248 So.2d 504, 506 (Fla. 4th DCA 1971) decision approved, Post v. Lunney, 261 So.2d 146 (Fla. 1972). The court did not include social guests who were privately invited on or to the premises in this "public invitee" status: social guests maintained their traditional licensee status.
In Wood v. Camp, 284 So.2d 691 (Fla. 1973), the court expanded the Restatement's invitation test by allowing social guests to be raised to the same status as business visitors or public invitees. The court called these social guests "licensees by invitation" and said that the invitation may be either an express invitation or a reasonably implied invitation. Wood, 284 So.2d at 695. In so ruling, the court continued to recognize the category of "uninvited licensees" which it defined as "persons who choose to come upon the premises solely for their own convenience without invitation either expressed or reasonably implied under the circumstances." Id.
So, due to the ruling in Wood, the categories of invitee and licensee were redefined. The status of invitee was expanded to include business visitors and public invitees as well as licensees by invitation. What remains of the licensee category is the uninvited licensee and its twin, the discovered trespasser. The category of trespasser was not affected.[4]
Under the circumstances of this case, there is no material issue of fact that Bishop was not invited on the premises as a social guest. Accordingly, Bishop does not qualify as a "licensee by invitation". The "licensee by invitation" category is founded *725 upon a social guest relationship which requires some sort of effort by the landowner or his agent to initiate a relationship with the entrant. Here, there was no initiative made by the landowner or anyone connected to him to invite Bishop on his land, and Bishop even believed he was on public land and stated he would not have gone on the property had he known in any way that it was private property. Bishop argues, however, that the "licensee by invitation" status set out in Wood should be expanded from its social guest factual background to a broader category where an implied invitation would not require any private or personal aspect to the relationship. He calls this category a "licensee by implied invitation".
It would appear that the more accurate subcategory for the consideration of Bishop's status would be as a "public invitee" who was impliedly invited on the land. Bishop claims that he was impliedly invited on the property because the property was held open to the public for recreational purposes, because there were no posted signs or fences or any other indications that the property was not public property, and because the particular area was continually used by the public as a recreational area and such use was known by the landowner. Bishop argues that this evidence raises an issue of fact that there was a reasonably implied invitation from the landowners to the public for the public to use the land for recreational purposes.
Again, under the circumstances of this case and taking the facts presented in the light most favorable to Bishop, there was no reasonably implied invitation for the public to use the land. The landowners had nothing to do with creating the rope swing, nor did they do anything to change the natural environment. Trees growing on undeveloped property beside a river should be allowed to remain open to the river. It is difficult to conceive of how trees abutting riverfront property could be fenced off from the river. Further, erecting "Posted" or "No Trespassing" signs is purely optional to a landowner. The arguments presented by Bishop amount to no more than a "bare conclusion" that the landowners had impliedly invited the public on the land. See Libby v. West Coast Rock Company, Inc., 308 So.2d 602 (Fla. 2d DCA) cert. denied, 325 So.2d 6 (Fla. 1975) (landowner removed all fences, barricades and warning signs from roadways adjacent to rock pits on its property and had knowledge that the land was used regularly and frequently at night as a place for young people to park. The plaintiff therein drowned when his car was driven into one of the rock pits which had become filled with water. The appellate court held that the plaintiff's category would not be elevated from an uninvited licensee to that of invitee upon the bare conclusion that the landowner had "impliedly invited the citizens of the area" to use the premises by allowing them to remain open for use by the public as a "lovers' lane").
In conclusion, there are no material issues of fact existing in this case that would justify elevating Bishop's status beyond that of an uninvited licensee. An uninvited licensee is neither an invitee nor a trespasser, but rather, a legal status in between whose presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner. Iber v. R.P.A. International Corporation, 585 So.2d 367 (Fla. 3d DCA 1991). See also Restatement (Second) of Torts § 330 Comment c (1965).
As an uninvited licensee the landowners owed Bishop a duty to refrain from wanton negligence or willful misconduct which would injure him, to refrain from intentionally exposing him to danger, and to warn him of a defect or condition known to the landowners to be dangerous when such danger is not open to ordinary observation by the licensee. Post v. Lunney, supra. The next determination is whether the landowners breached this duty.
The record contains no evidence to support a finding that the landowners performed any willful or wanton negligent act that caused injury to Bishop or that the landowners intentionally exposed Bishop to danger. On the issue of whether the landowners breached their duty to warn Bishop of a defect or condition known to the landowners *726 to be dangerous when such danger is not open to ordinary observation by the licensee, there are no allegations of any prior accidents of a similar nature or of any knowledge by the landowners of a peculiar propensity of the river to carry underwater debris. Also, the danger of the rope swing is open to ordinary observation by all. The danger of there being something floating beneath the surface of the water or of hitting the bottom of the river is part of the danger implicitly involved in using the rope swing. See Morris v. Florentes, Inc., 421 So.2d 582 (Fla. 5th DCA 1982) (open ditch across a dirt bike trail was considered to be open to ordinary observation).
There being no material issue of fact as to Bishop's status as being, at best, that of an uninvited licensee, nor any issue of there being a breach of a duty owed by the landowners to Bishop as an uninvited licensee, the summary judgment of the trial court is affirmed.[5]
AFFIRMED.
GOSHORN, C.J., and W. SHARP, J., concur.
NOTES
[1] "Licensee by invitation" is a term created by the court in Wood v. Camp, 284 So.2d 691 (Fla. 1973), to identify the extension of the class of invitees to social guests. To pull together these subcategories the term "licensee by invitation" or "invited licensee" should be added to Paragraph 1 of the Restatement's "invitation test" (see footnote 2). Also, a paragraph 4 would be added, to wit:

4. A licensee by invitation or invited licensee is a person who is privately or personally invited to enter or remain on land for his own convenience, pleasure, or benefit.
[2] Section 332 of the Restatement provides:

(1) An invitee is either a public or a business visitor.
(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possession of land.
[3] Florida Standard Jury Instruction 3.2(a) defines the invitee category as:

A person is invited on the land or premises of another when he enters or remains there at the invitation of the ownner or possessor. Such an invitation may be either express or reasonably implied from the circumstances. (emphasis added.)
[4] In Wood, the court specifically rejected the suggestion to remove all distinctions of status and degrees of care involving trespassers, licensees, and invitees, calling it a "dangerous generality" to mold the distinctions into a general consideration by the trier of fact as to what was proper and reasonable under the circumstances. Wood, 284 So.2d at 694. The court stated, "We feel that the standards herein set forth are based upon logic and reason and upon the relationship of the parties." Wood, 284 So.2d at 696.
[5] We note that the trial court's conclusion that Bishop was a trespasser constitutes harmless error because the duty of care owed to a trespasser is substantially the same as the duty owed to an uninvited licensee.