698 So.2d 1241 (1997)
Noraida N. BARRIO, Appellant,
v.
CITY OF MIAMI BEACH, a Florida municipal corporation, Appellee.
No. 96-2983.
District Court of Appeal of Florida, Third District.
July 16, 1997.
Rehearing Denied October 1, 1997.
*1242 Kurzban, Kurzban, Weinger & Tetzeli, P.A.; Metsch & Metsch, P.A. and Lawrence R. Metsch, Miami, for appellant.
Murray H. Dubbin, City Attorney and Sheri Alden Sack, First Assistant City Attorney, for appellee.
Before NESBITT, GREEN and SORONDO, JJ.
GREEN, Judge.
Noraida N. Barrio appeals an adverse final summary judgment entered in favor of the City of Miami Beach ("City") in her premises liability action. We affirm based upon our conclusion that Ms. Barrio was an uninvited licensee when injured on the City's property and that the City breached no duty of care by failing to warn her of an open and obvious danger.
The undisputed facts adduced from the record below reveal that on April 24, 1993, at approximately 3:30 a.m., Ms. Barrio and a companion were sitting on a beach area owned by the City in the vicinity of 14th Street and Miami Beach (commonly referred to as "South Beach"). While on the beach during these early morning hours, they were *1243 robbed at gunpoint by three males. One of the assailants shot and injured Ms. Barrio in the upper left leg. Prior to this incident, there had been three other reported early morning armed robberies of visitors to various other stretches of the beach area to the south of where Ms. Barrio's injury occurred (i.e., on the 300 and 400 blocks of the beach). There is a sign posted on 12th Street which states that the beach is closed between the hours of midnight and 5:00 a.m. The City, however, does not actually deem the beach area closed to visitors during these hours; it simply does not provide lifeguard services to them during these hours. Nor does the City promote or sponsor activities on the beach area (e.g., festivals) during these hours to encourage visitation. Simply put, the City neither affirmatively promotes nor discourages visitation to the beach during these early morning hours.[1]
Ms. Barrio brought this action against the City for her injuries and alleged that as an invitee to the beach, the City had a duty to warn her of the three prior armed robberies of which it had knowledge. She further alleged that the City's breach of this duty proximately resulted in her injuries. The City moved for summary judgment on various grounds. The trial court, apparently travelling under the assumption that Ms. Barrio was an invitee at the time of her attack, found that the City had no liability because her criminal attack was not reasonably foreseeable. We agree that the City has no liability in this cause as a matter of law but for reasons other than relied upon by the lower court.
At the outset, we must determine Ms. Barrio's legal status on the City's property at the time of her attack and, where as here, the material facts are not in dispute, it is appropriate for us to fix her status as a matter of law. See Wood v. Camp, 284 So.2d 691, 696 (Fla.1973); Zipkin v. Rubin Constr. Co., 418 So.2d 1040, 1043 (Fla. 4th DCA 1982). A person who enters the land or property of another falls within one of three classifications: invitee, licensee, or trespasser. See Lukancich v. City of Tampa, 583 So.2d 1070, 1072 (Fla. 2d DCA 1991) (quoting Post v. Lunney, 261 So.2d 146 (Fla.1972)). A public invitee is a licensee on the premises by invitation, either express or reasonably implied, of the owner or controller of the property. See Id. (citing Wood, 284 So.2d at 691). An uninvited licensee is a person who chooses "to come upon the premises solely for [his or her] own convenience without invitation either expressed or reasonably implied under the circumstances." Id. (citing Wood, 284 So.2d at 695). Finally, a trespasser is a person "who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his [or her] own, or at his [or her] convenience, or merely as an idler with no apparent purpose, other than perhaps to satisfy his [or her] curiosity." Id. (quoting Post, 261 So.2d at 147). The classification of the entrant is significant because the duty of care owed by the landowner varies according to the visitor's status. See Lukancich, 583 So.2d at 1072; Morris v. Florentes, Inc., 421 So.2d 582, 583 (Fla. 5th DCA 1982); Zipkin, 418 So.2d at 1042.
Based upon the undisputed record evidence, we reject Ms. Barrio's contention that she was an invitee on the beach at the time of her attack. We think that her argument in this regard is clearly belied by the City's posted sign indicating that the beach was closed between the hours of midnight and *1244 5:00 a.m.; the fact that the City provided no life guard services during these hours; and the fact that the City did nothing to explicitly or implicitly entice or invite her to enter or remain on the beach area at 3:30 a.m. Ms. Barrio simply decided on her own to leisurely stroll onto the beach area with friends. Based upon the fact that the City was aware of the presence of visitors such as Ms. Barrio to its beach area during the hours of midnight and 5:00 a.m. and did nothing to actively discourage such visitation, we conclude that at best, Ms. Barrio can only be deemed an uninvited licensee at the time of her attack. See Bishop v. First Nat'l Bank, 609 So.2d 722, 725 (Fla. 5th DCA 1992) ("An uninvited licensee is neither an invitee nor a trespasser, but rather, a legal status in between whose presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner."). Thus, because Ms. Barrio was not an invitee at the time of her attack, all of the cases primarily relied upon by her on this appeal are completely inapposite. See U.S. Sec. Services Corp. v. Ramada Inn, 665 So.2d 268, 269 (Fla. 3d DCA 1995) (operator of hotel owed non-delegable duty to provide its invitee with reasonable protection against third party criminal attacks), review denied, 675 So.2d 121 (Fla.1996); Berman v. Weberman Caterers, Inc., 647 So.2d 1068 (Fla. 3d DCA 1994) (reversing summary judgment in favor of landowner and in favor of business invitee); Hill v. City of North Miami Beach, 613 So.2d 1356, 1357 (Fla. 3d DCA 1993) (reversing summary judgment in favor of City and against victim who was an invitee on the City's premises at the time of the criminal attack); Ameijeiras v. Metropolitan Dade County, 534 So.2d 812, 813 (Fla. 3d DCA 1988) (finding landowner has duty to protect an invitee on his premises from a criminal attack that is reasonably foreseeable), review denied, 542 So.2d 1332 (Fla. 1989).
As an uninvited licensee of the beach, the City owed the following duty to Ms. Barrio:
a duty to refrain from wanton negligence or willful misconduct which would injure [her], to refrain from intentionally exposing [her] to danger, and to warn [her] of a defect or condition known to the landowners to be dangerous when such danger is not open to ordinary observation by the licensee.
Lane v. Estate of Morton, 687 So.2d 53, 54 (Fla. 3d DCA 1997). Here, the gravamen of Ms. Barrio's complaint was that the City breached its duty by failing to warn her of the known prior criminal attacks on other areas of the beach. With regards to uninvited licensees, however, we have said that the danger of crime and criminal assaults is an open and obvious danger for which there is no duty to warn. See Lane 687 So.2d at 54; see also Davis v. City of Miami, 568 So.2d 1301, 1302 (Fla. 3d DCA 1990). Therefore, the City breached no duty to Ms. Barrio as a matter of law.
For the reasons expressed herein, we affirm the summary judgment under review.
Affirmed.
NOTES
[1] The unrefuted testimony of the Assistant City Manager was as follows:

Q. Is it the city's intention for a person that comes to South Beach to believe the beach is open after night?
A. I can't answer that. What the city's intention is of the city is [sic] an entity. People come to the city, to the beach, whether it's tourists or locals. They come to the clubs and restaurants. They may take a stroll on the sidewalk, or may wander on the beach, they may use a bathroom, or not.
They all know that is what's available, as you or I would. I couldn't say that we promote going on the beach or staying away from the beach or any of that.
* * * * * *
Q. They don't discourage?
A. We don't encourage.
Q. So you neither discourage nor encourage?
A. Yes, of course. Yes, I mean I agree with your assessment.
* * * * * *