DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARTERHOUSE ASSOCIATES, LTD., INC.,** As Trustee of the Kenneth and Gail Browne Trust U/D/T DTD June 7, 2010, **KENNETH BROWNE**, and **GAIL BROWNE**,
Appellants,

v.

**VALENCIA RESERVE HOMEOWNERS ASSOCIATION, INC.,**
Appellee.

No. 4D17-2640

[November 28, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Thomas H. Barkdull III, Judge; L.T. Case No. 502014CA015292.

Scott Edwards of Scott J. Edwards, P.A., Boca Raton, and Christopher A. Sadjera of Sajdera Kim, PLLC, Boca Raton, for appellants.

Ashley Landrum of Vernis & Bowling of Palm Beach, P.A., North Palm Beach, and Allen E. Rossin of Rossin & Burr, PLLC, West Palm Beach, for appellee.

KLINGENSMITH, J.

Is a personal trainer in a fitness center like a "call girl" sitting at a clubhouse bar? This was the comparison drawn by the trial court when granting partial summary judgment in favor of a homeowner's association against one of its property owners regarding the issue of whether the personal trainer was an invitee or licensee. For the reasons set forth below, neither the analogy nor the analysis used by the trial court was properly applied to the facts presented here. Therefore, we reverse.

Charterhouse Associates, Ltd., Inc.,[1] owns property within the Valencia Reserve community. It authorized Kenneth and Gail Browne to reside at

---

[1] Charterhouse filed the initial notice of appeal as trustee of the Kenneth and Gail Browne Trust U/D/T DTD June 07, 2010. Collectively, Charterhouse and the Brownes will be referred to as "appellants."

the property and assume the ownership rights of Charterhouse, which included membership within the Valencia Reserve Homeowner's Association ("the Association"). The Valencia Reserve community includes amenities such as a fitness center, which is the Association's property. According to the Association's Declaration, the center is available for the use of owners, family members, guests, invitees, and tenants.

On several occasions, the Brownes paid and authorized their friend, a personal trainer, to accompany them to the fitness center. He was only present when invited by the Brownes. Sometime thereafter, the Association entered into a contract with a third-party vendor, Total Health Systems ("THS"), to be the exclusive provider of fitness services in the Association's fitness center.

The relevant provisions of the Association's Declaration are as follows:

PRIVATE USE: For the term of this Declaration, the Association Property (except otherwise specifically provided in this Declaration, e.g., the Rural Parkway) is not for the use and enjoyment of the public, *but is expressly reserved for the private use and enjoyment of the Declarant, the Association, and the Owners, and their family members, guests, invitees and tenants, but only in accordance with this Declaration.*

. . . .

OWNERS' EASEMENTS OF ENJOYMENT: *Every Owner and family member, guest, tenant, agent, or invitee of an Owner shall, except as may otherwise be provided in this Declaration, have a permanent and perpetual, nonexclusive easement for ingress and egress over, enjoyment in, and use of Association Property within the Property* (except as otherwise may be provided elsewhere in this Declaration), in common with all other Owners, their family members, guests, tenants, agents, and invitees, which easement shall be appurtenant to, and shall pass with deed and/or title to, each Owner's Lot. This right shall be subject to the following conditions and limitations:

. . . .

C. The right of the association to establish, amend and/or abolish from time to time, uniform rules and regulations pertaining to the use of the Association Property.

(Emphases added). Because of the contract with THS, the Association enacted a new rule prohibiting private trainers, instructors, physical therapists, and massage therapists from working in the fitness center.[2]

Appellants filed an action seeking declaratory relief, injunctive relief, and damages for breach of their rights under the Association's Declaration. They alleged that the Association exceeded its powers granted by the Declaration by excluding the Brownes' personal trainer from working with them at the fitness center via its newly enacted rule.[3] The Association moved for partial summary judgment, and argued that the trainer was a licensee who could be excluded from the Association's property based on the new rule. Appellants opposed the motion, and asserted that their trainer was an invitee permitted to enter the fitness center according to the plain wording of the Declaration.

At the summary judgment hearing, the trial court found in favor of the Association:

> If [the personal trainer] is getting a dime for training [the Brownes], at any time, which you have basically said he is, then he is carrying on a business, and you're going to the Fourth DCA if you have a problem with my ruling.

. . . .

> As soon as [the personal trainer] starts getting paid for his services is the difference between the girlfriend sitting at the clubhouse bar and the call girl. One is getting paid, they're a licensee; the other one is an invitee. Invitees are welcome, businesses are not.

Consequently, the trial court entered final partial summary judgment for the Association, and this appeal followed.

The standard of review regarding a trial court's ruling on a motion for summary judgment is *de novo. See Frost v. Regions Bank,* 15 So. 3d 905, 906 (Fla. 4th DCA 2009). "When reviewing a ruling on summary judgment,

---

[2] Notably, this rule did not prohibit private swimming instructors from providing private instruction in the Association's swimming pool.

[3] The trial court action includes other disputes between the parties; however, only the claims related to the fitness center were at issue in the Association's Motion for Partial Summary Judgment.

3

an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party." *Weinstein Design Grp., Inc. v. Fielder*, 884 So. 2d 990, 997 (Fla. 4th DCA 2004) (quoting *City of Lauderhill v. Rhames*, 864 So. 2d 432, 434 n.1 (Fla. 4th DCA 2003)). "Summary judgment cannot be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, conclusively show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Frost*, 15 So. 3d at 906. "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact." *Albelo v. S. Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996). "When a defendant moves for summary judgment, the court is not called upon to determine whether the plaintiff can actually prove his cause of action. Rather, the court's function is solely to determine whether the record conclusively shows that the claim cannot be proved as a matter of law." *Jennaro v. Bonita-Fort Myers Corp.*, 752 So. 2d 82, 83 (Fla. 2d DCA 2000).

Personal Trainer's Status as an Invitee

Under the common law, a visitor who enters the private property of another falls within one of three classifications: a licensee, an invitee, or a trespasser. *See Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972); *see also Nolan v. Roberts*, 383 So. 2d 945, 946 (Fla. 4th DCA 1980) ("In the leading Florida case of *Wood v. Camp*, 284 So. 2d 691 (Fla. 1973), the Supreme Court divided plaintiffs in cases of this nature into three categories: invitees, uninvited licensees and trespassers.").

To determine whether one has the status of an invitee, Florida courts originally applied the "economic benefit test":

> [T]he general test is whether the injured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. *In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee.*

*McNulty v. Hurley*, 97 So. 2d 185, 188 (Fla. 1957) (emphasis in original) (quoting *Cowart v. Meeks*, 111 S.W.2d 1105, 1107 (Tex. Comm'n App. 1938)).

4

Over time, courts began to use the "invitation test" to achieve more uniform results. *See Post*, 261 So. 2d at 148-49. In *Post*, the Florida Supreme Court receded from *McNulty*, and stated, "We agree with the Fourth District Court of Appeal that the Second Restatement of Torts invitation test, which includes the public invitee as well as the business invitee is preferable to the exclusive use of the mutual benefit test . . . ." *Post*, 261 So. 2d at 148; *see also Wood*, 284 So. 2d at 693 (noting that the terms "mutual benefit test" and "economic benefit test" are interchangeable); *Lunney v. Post*, 248 So. 2d 504, 506 (Fla. 4th DCA 1971) ("Florida, too, has recognized the value of the invitation test.").

According to the Restatement's invitation test, "[a]n invitee is either a public invitee or a business visitor." Restatement (Second) of Torts § 332 (1965). "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Id.* "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.*

In words recently echoed by our court:

> [T]he invitation test bases "invitation" on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe that the premises were intended to be used by visitors for the purpose which this entrant was pursuing, and that such use was not only acquiesced in by the owner or possessor, but that it was in accordance with the intention and design with which the way or place was adopted or prepared.

*Arp v. Waterway E. Ass'n, Inc.*, 217 So. 3d 117, 120 (Fla. 4th DCA 2017) (quoting *Smith v. Montgomery Ward & Co.*, 232 So. 2d 195, 198 (Fla. 4th DCA 1970)). Invitees also include anyone present on a premises via express or reasonably implied invitation of the property owners. *Wood*, 284 So. 2d at 695.

Nevertheless, the Florida Supreme Court has maintained its limited definition of licensees in the wake of *Wood*, *Post*, and *Smith*:

> We thereby eliminate the distinction between commercial (business or public) visitors and social guests upon the premises . . . . In doing so, we continue the category of licensees who are [u]ninvited, that is, persons who choose to

5

> come upon the premises *solely for their own convenience without invitation* either expressed or reasonably implied under the circumstances.

*Wood*, 284 So. 2d at 695 (alteration and emphasis added). "An uninvited licensee is neither an invitee nor a trespasser, but rather, a legal status in between whose presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner." *Arp*, 217 So. 3d at 121 (quoting *Bishop v. First Nat'l Bank of Fla.*, 609 So. 2d 722, 725 (Fla. 5th DCA 1992)); *see, e.g., Arp*, 217 So. 3d at 119 (holding that an individual crossing a shopping center's property late at night as a shortcut when the center's businesses were closed was nothing more than an uninvited licensee); *Porto v. Carlyle Plaza*, 971 So. 2d 940, 941 (Fla. 3d DCA 2007) (finding that an individual walking a dog across private property and allowing it to relieve itself classifies such individual as an uninvited licensee); *Iber v. R.P.A. Int'l Corp.*, 585 So. 2d 367, 368 (Fla. 3d DCA 1991) (concluding that an individual entering an office building to use building's private telephone to call a taxi was an uninvited licensee); *Barrio v. City of Miami Beach*, 698 So. 2d 1241, 1242 (Fla. 3d DCA 1991) (holding that an individual walking on a public beach after midnight when the beach was closed to the public was an uninvited licensee).

The Association's Declaration gives its property owners[4] an easement for ingress and egress, enjoyment in, and use of the fitness center, and specifically authorizes their guests and invitees to use the premises.[5] When a homeowner exercises in the Association's fitness center and invites a third party along, whether for companionship or personalized guidance, they are using the property for a recreational purpose. This remains true regardless of whether the guest is a friend or a business invitee, because the activity they are engaging in is virtually the same. The evidence established that the Brownes expressly invited the trainer to accompany them into the fitness center, he was only on the premises with the Brownes, and did not attempt to gain business from other residents. The trainer never entered or remained in the fitness center solely for his own convenience at any time without an express or implied invitation from the Brownes. *See Arp*, 217 So. 3d at 120; *Wood*, 284 So. 2d at 695; *Post*, 261 So. 2d at 148-49; *Smith*, 232 So. 2d at 198.

---

[4] In this case, Charterhouse, itself, or the Brownes via authorization from Charterhouse, as noted above.

[5] This court cannot ignore the fact that while the trainer's presence certainly benefitted the homeowner, it also indirectly benefitted the Association by facilitating the use of the exercise room by the resident, while also enabling the safe and proper use of the equipment.

The trial court erred by using the "economic benefit" test when it concluded that the Brownes' personal trainer was a licensee. The trial court incorrectly focused on the fact that the Brownes' trainer was paid for his services. Instead, the status of the personal trainer in this scenario is more akin to the invitee "girlfriend" at a clubhouse (using the trial court's analogy), rather than the uninvited licensee "call girl" soliciting her services to provide a "girlfriend experience" for paying customers.

As this court stated in *Beachwood Villas Condo. v. Poor*, 448 So. 2d 1143, 1144 (Fla. 4th DCA 1984):

> *Hidden Harbour Estates, Inc. v. Basso*, 393 So. 2d 637 (Fla. 4th DCA 1981), suggested that condominium rules falling under the generic heading of use restrictions emanate from one of two sources: the declaration of condominium or the board of directors. Those contained in the declaration "are clothed with a very strong presumption of validity . . . ," *id.* at 639, because the law requires their full disclosure prior to the time of purchase and, thus, the purchaser has adequate notice. *See* Section 718.503(2)(a), Florida Statutes (1983). Board rules, on the other hand, are treated differently. *When a court is called upon to assess the validity of a rule enacted by a board of directors, it first determines whether the board acted within its scope of authority* and, second, whether the rule reflects reasoned or arbitrary and capricious decision making.

(Emphasis added).

In *Beachwood*, this court was tasked with determining the validity of two rules enacted by a condominium board of directors. 448 So. 2d at 1143. As in this case, there was no suggestion that the rule under consideration violated the Condominium Act, Section 718, Florida Statutes (1983), or was otherwise unreasonable, only the scope of the board's authority was in question:

> A declaration of condominium is "the condominium's 'constitution'." *Schmidt v. Sherrill*, 442 So. 2d 963, 965 (Fla. 4th DCA 1984). Often, it contains broad statements of general policy with due notice that the board of directors is empowered to implement these policies and address day-to-day problems in the condominium's operation through the rulemaking process. It would be impossible to list all

restrictive uses in a declaration of condominium. Parking regulations, limitations on the use of the swimming pool, tennis court and card room—the list is endless and subject to constant modification. Therefore, we have formulated the appropriate test in this fashion: *provided that a board-enacted rule does not contravene either an express provision of the declaration or a right reasonably inferable therefrom, it will be found valid, within the scope of the board's authority.* This test, in our view, is fair and functional; it safeguards the rights of unit owners and preserves unfettered the concept of delegated board management.

*Beachwood*, 448 So. 2d at 1145 (emphasis added).

The Association claims they enacted the personal trainer exclusion rule pursuant to the Declaration's provision authorizing the Association to "provide owners with service [and] amenities . . . which will enhance the quality of life at Valencia Reserve." Regardless of the rule's intent, it ultimately fails by directly conflicting with the Declaration's provision granting a property owner's invitees access to the fitness center. *See Beachwood*, 448 So. 2d at 1145. The rule contravenes an express provision of the Declaration, therefore, the Association exceeded the scope of its authority by enacting the subject rule. Accordingly, we need not discuss the reasonableness of the rule. *See id.* at 1144.

In sum, the trial court's errors arose from its failure to apply the proper test when designating the personal trainer as a licensee. That error was compounded when the trial court erroneously upheld the validity of the rule as applied, and failed to consider whether the Association had the authority to enact the rule at all. Therefore, we reverse the partial summary judgment entered in favor of the Association, and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

TAYLOR and KUNTZ, JJ., concur.

\*            \*            \*

**Not final until disposition of timely filed motion for rehearing.**

8