[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13626

_____

D.C. Docket No. 6:18-cv-01539-GAP-GJK

ROBIN FISHER,
LAURIE FISHER,
his spouse,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 27, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

NEWSOM, Circuit Judge:

This appeal requires us to interpret a Florida statute that protects owners of outdoor recreation areas against ordinary premises liability in tort. As relevant here, the statute provides that if a landowner opens its land to the public for outdoor recreational purposes, it incurs "no duty of care to keep that area safe for entry or use by others," no "duty of care toward a person who goes on the area," and no "duty . . . to give warning to persons entering . . . that area of any hazardous conditions." Fla. Stat. § 375.251(2)(a). We must decide whether the statute applies even where, as here, the injured entrant went onto the land for reasons related to business and, thus, in common-law lingo, was a "business-visitor invitee." We hold that the statute, which speaks in broad and unqualified terms, means exactly what it says—that an owner incurs no ordinary duty of care to, and no duty to warn, any entrant, regardless of his common-law status or reason for entry.

## I

The federal government operates Patrick Air Force Base on a large parcel of land in Brevard County, Florida. That land encompasses Tables Beach, which fronts the Atlantic Ocean and which the government has opened to the public. Robin and Laurie Fisher, a Florida couple, frequented Tables Beach because Mrs. Fisher worked as a civilian employee at the base.

2

The government maintained a public shower at Tables Beach with a wooden floor.  According to the Fishers, whose allegations we accept as true for the purposes of this appeal, the government negligently allowed an algae-like film to accumulate on the shower floor and failed to provide any warning that the film had caused the floor to become slippery.  In 2015, while at Tables Beach, Mr. Fisher stepped into the shower, slipped, and fell down hard.  The fall caused multiple severe injuries that eventually necessitated, among other things, two shoulder surgeries.

The Fishers sued the United States in federal court under the Federal Tort Claims Act.  Mr. Fisher alleged that the government had negligently allowed an unreasonable accumulation of water to build up in the shower, negligently failed to treat the shower floor with a non-slip finish, and failed to warn him of the resulting hazardous condition.  Mrs. Fisher sued for loss of consortium.

The government moved to dismiss the Fishers' action.  It argued that the United States was immune from suit because the FTCA, which waives sovereign immunity in specified instances, authorizes only those tort actions that can be brought against private persons under state law.  And, the government contended, under Florida law—specifically, what we'll call its "recreational-use statute"—if a landowner "provides the public with an area for outdoor recreational purposes," it is protected against ordinary premises liability.  Fla. Stat. § 375.251.  Because the

3

Fishers' claims arose from a fall on its public beach, the government insisted that their claims fell outside the statute's terms, and thus outside the FTCA's waiver of sovereign immunity.

In response, the Fishers argued that Florida's recreational-use statute doesn't protect landowners against suits by so-called "business visitor" invitees, a legal term of art that refers to those invited onto land for reasons related to business. Because Mrs. Fisher worked at Patrick Air Force Base, the Fishers asserted that they were business-visitor invitees and, therefore, that the statute didn't affect the government's duty of care or duty to warn *as to them*.[1]

The district court granted the motion to dismiss, holding that the recreational-use statute eliminated the government's ordinary duty of care and duty to warn as to the Fishers. The Fishers appealed.

## II

### A

In order for us to exercise jurisdiction over a damages action against the United States in its sovereign capacity, the plaintiff must show that the government

---

[1] The Fishers separately argued that because the recreational-use statute's protection applies only to landowners who make "no charge . . . for entry to or use of the area" and derive "no other revenue . . . from patronage of the area," § 375.251(2)(c), the government wasn't protected because it derived revenue from rental equipment used at Tables Beach. Because the Fishers haven't renewed that argument on appeal, we won't address it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

consented to the suit. *See Zelaya v. United States*, 781 F.3d 1315, 1321–23 (11th Cir. 2015).[2] In the Federal Tort Claims Act, the government has consented to be sued under "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [allegedly tortious] act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, we may exercise jurisdiction over this suit if—and only if—it could be brought against a private person under Florida tort law.

The government argues that the Fishers' suit couldn't be brought against a private landowner under Florida law—and, accordingly, that we can't exercise jurisdiction over it here—because the state's recreational-use statute would bar it. That statute broadly protects owners of public outdoor recreation areas against ordinary premises liability in tort. Its operative provision states that—

> An owner or lessee who provides the public with an area for outdoor recreational purposes owes no duty of care to keep that area safe for entry or use by others, or to give warning to persons entering or going on that area of any hazardous conditions, structures, or activities on the area. An owner or lessee who provides the public with an area for outdoor recreational purposes:
>
> 1.      Is not presumed to extend any assurance that the area is safe for any purpose;
>
> 2.      Does not incur any duty of care toward a person who goes on the area; or

---

[2] We review this question of law de novo. *See Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015).

3.      Is not liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the area.

Fla. Stat. § 375.251(2)(a).

By its terms, § 375.251(2)(a) bars the Fishers' suit. First, the government is an "owner." Second, it provides the public access to Tables Beach, "an area for outdoor recreational purposes." And finally, the Fishers are "persons" and "others" within the meaning of the statute.[3] Accordingly, by dint of § 375.251(2)(a)'s clear text, the government owed Mr. Fisher no "duty of care" or "duty . . . to give [him] warning" of a hazardous condition. Because the Fishers' suit seeks damages for the government's breach of its ordinary duty of care and duty to warn, the statute squarely forecloses it.

**B**

In an effort to overcome to the recreational-use statute's plain meaning, the Fishers direct our attention to an adjacent statutory subsection. Codified immediately after § 375.251(2), § 375.251(3) states that an owner who enters into a written agreement with the state regarding the use of an area for outdoor recreational purposes owes no duty of care or duty to warn as to users of that area. As the Fishers emphasize, § 375.251(3) then goes on to say, expressly, that "[t]his

---

[3] The Fishers suggested at oral argument that the word "others" meant those invited onto the land for reasons unrelated to business. We think that term is more fairly read to refer to anyone *other than* the owner, especially because the statute appears to use it interchangeably with the word "persons."

subsection applies to all persons going on the area that is subject to the agreement, *including invitees, licensees, and trespassers*." Fla. Stat. § 375.251(3)(a)–(b) (emphasis added). Aside from the fact that subsection (3) involves state contracting, whereas subsection (2) does not, the two provisions contain similar language to effectuate similar protections.

In light of the proximity of, and similarity between, the two provisions, the Fishers invoke the proposition that where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). Because subsection (3) expressly references "invitees, licensees, and trespassers," but subsection (2) does not, the Fishers reason (1) that we should interpret the latter to exclude at least some category of entrants and (2) that the most plausible candidate for exclusion is the "business visitor," a subcategory of "invitee."

Because the Fishers' argument depends on some background principles of common-law premises liability, we provide a brief primer: The common law assigns landowners varying duties of care to entrants depending on the terms of entry. If an individual enters without permission, he is owed the lowest duty of care as a "trespasser." *See Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972). If he

enters with permission, he is owed an intermediate duty of care as a "licensee." *Id.* And if he enters pursuant to an invitation, he is owed the highest duty of care as an "invitee." *Id.* Importantly here, some courts further divide the "invitee" category into two subcategories: "public invitees" and "business visitors." *See id.* at 148. If someone enters pursuant to an invitation for a purpose for which the land was held open to the public, he is a "public invitee." If he enters pursuant to an invitation for a purpose connected with business dealings with the owner, he is a "business visitor." *See id.* Although Florida law isn't crystal clear on the subject, landowners at least arguably owe business-visitor invitees a slightly higher standard of care than they owe public invitees.[4]

With those common-law basics in mind, let's return to the Fishers' argument, which proceeds as follows:

(1)    Sections 375.251(2) and 375.251(3) are largely identical.

(2)    Section 375.251(3), by its terms, applies to "invitees, licensees, and trespassers."

---

[4] On the one hand, a Florida-practice treatise says that owners must warn public invitees only against latent perils that should be known to the owner, but that owners must affirmatively inspect their land for business-visitor invitees to ensure that the conditions are safe. *See* 41 Fla. Jur. 2d Premises Liability §§ 19, 23. On the other hand, the Florida Supreme Court long ago purported to "eliminate the distinction between commercial (business *or* public) visitors and social guests upon the premises, applying to [all] the *single standard* of reasonable care under the circumstances." *Wood v. Camp*, 284 So. 2d 691, 695 (Fla. 1973) (emphases added). We needn't decide in this case whether any daylight remains between the duties owed to public and business-visitor invitees under Florida law.

(3)     Therefore, § 375.251(2), which lacks similar language, must *not* apply to all three categories—invitees, licensees, and trespassers.

(4)     Therefore, § 375.251(2) doesn't apply to *business-visitor* invitees, but only to trespassers, licensees, and *public* invitees.

(5)     The Fishers were business-visitor invitees, so § 375.251(2) doesn't apply to them.

We cannot accept the Fishers' argument, which we find begins to fray at step (3) and then completely unravels at step (4).

As for step (3), we think the Fishers make too much of the discrepancy between the two provisions. To be sure, Florida courts recognize the "generally accepted canon of construction" that "when the legislature includes a provision in one section of a statute but excludes it in another, courts will deem the difference intentional and will assign meaning to the omission." *Bellsouth Telecomm. v. Meeks*, 863 So. 2d 287, 291 (Fla. 2003). But they also recognize the foundational principle that courts should not "resort to rules of statutory construction" to counteract statutory text that is "clear and unambiguous." *Daniels v. Florida Dept. of Health*, 898 So. 2d 61, 64 (Fla. 2005). After all, legislatures occasionally have some reason for including clarifying language in one place but not another—and sometimes just draft statutes inelegantly.

Here, subsection (2)—which expressly refers to "others" and applies to all "persons"—is sufficiently "clear and unambiguous" that reliance on an inference from silence would be inappropriate. It's at the very least possible that the

legislature added the clarifying language to § 375.251(3) in order to deal with the particular subject that it covers and to quell any doubt that entities contracting with the state would be protected. Short story: We will not invoke the "negative pregnant" principle as an "interpretive trump card"—especially where, as here, it "suggests results strangely at odds with other textual pointers." *Field v. Mans*, 516 U.S. 59, 75, 67 (1995).

Moreover, and in any event, the Fishers' argument fails at step (4). Even if we were to assume (at step (3)) that the Florida legislature deliberately excluded from § 375.251(2) the "inclu[sion of] invitees, licensees, and trespassers," that doesn't justify (or really even suggest) the distinction that the Fishers draw between *public* invitees and *business-visitor* invitees. Neither of those subcategories of invitees is mentioned by name anywhere in § 375.251(3), and the Fishers haven't directed us to any cases arising under the recreational-use statute that distinguish between the two. So even if we were inclined to apply the inclusion-exclusion rule here, the upshot would be that § 375.251(2) excludes one of the three categories mentioned by name in § 375.251(3)—"invitees, licensees, [or] trespassers"—*not* that it excludes some otherwise unmentioned subcategory of invitees.[5]

---

[5] We are aware, of course, of the general interpretive principle that statutes that alter settled common-law rules must do so clearly. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012). But for the reasons we have explained,

Accordingly, even assuming step (5)'s claim that the Fishers were business-visitor invitees—which itself is far from clear—we can't accept their invitation to read an exemption into § 375.251(2)(a)'s broad and unqualified language.[6]

## III

The plain language of Florida's recreational-use statute protects a qualifying landowner against a suit alleging a breach of its ordinary duty of care and duty to warn as to all entrants, regardless of their reason for entry. Accordingly, the government has not waived its sovereign immunity under the FTCA, so we cannot exercise jurisdiction over this action against it.  We **AFFIRM** the district court's dismissal.

---

§ 375.251(2)(a) is clear, so we can't "distort[]" it simply to preserve common-law rules of landowner liability.  *See id.*  Furthermore, Florida law provides another, countervailing rule of interpretation—that we should  "liberally construe[]" the recreational-use statute's provisions to "accomplish the purposes thereof."  Fla. Stat. § 375.061.  And the relevant statutorily-defined "purpose[]" here is "to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas."  *Id*. § 375.251(1).

[6] At oral argument, the Fishers urged us to consider the adverse consequences that would result from interpreting the recreational-use statute to apply without exemption to all "persons."  They suggested, for instance, that under a plain-meaning interpretation, an entity that made its land available to the public wouldn't be liable even if it negligently injured one of its own employees or a contractor whom it had hired to perform some service on the land.  Maybe.  We acknowledge that interpreting § 375.251(2) in accordance with its plain meaning may well protect owners from tort liability even against its employees and contractors.  But we expect that other legal mechanisms—such as workers' compensation law for employees and contract law for contractors—would provide relief to persons in such circumstances so as to avoid any truly inequitable results.  And of course, even if the statute as written did entail unfortunate consequences, it would still be our job to apply it according to its terms—and the legislature's job to re-write it if it saw fit.

11