[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10659

Non-Argument Calendar

_____

GEORGE E. BEASLEY, JR.,

Plaintiff-Appellant,

*versus*

WELLS FARGO BANK N.A.,
LILAC GROUP - SANFORD, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-00883-WWB-EJK

_____

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

George Beasley was shot in the head in a bank parking lot in downtown Sanford, Florida, at approximately 12:30 a.m. on November 17, 2018. He survived and filed a premises-liability lawsuit against the bank, Wells Fargo Bank, N.A. ("Wells Fargo"), and the alleged premises owner, Lilac-Group Sanford, LLC ("Lilac"), for negligent security. The district court granted summary judgment to the defendants. It first found that Florida law, specifically Fla. Stat. § 768.075(4), barred recovery for negligence because Beasley was engaged in the commission of a felony—possession of a firearm by a convicted felon—at the time of his injury on the property. It also concluded that Beasley could not prove his claim on the merits because he was at best an uninvited licensee and the defendants did not breach any duty owed to him. Beasley appeals, arguing that a reasonable jury could find that he did not knowingly possess a firearm and that he was a public invitee because the parking lot was held open to the public. After careful review, we affirm.

## I.

Around midnight on November 17, 2018, Beasley parked his car in the drive-through lane of a Wells Fargo bank located in downtown Sanford and walked to the Wet Spot bar across the street. The public frequently used the area where he parked for additional parking downtown. About thirty minutes after parking

his car there, Beasley returned to his car. As he did so, he was shot in the head by a man later identified as Andraus Lee.

An off-duty police officer working security at the Wet Spot heard the gunshot and notified dispatch before chasing after the shooter. Officer Otto Garcia arrived on scene first, within minutes of the gunshot, and found Beasley on the ground. Soon after, Sergeant Sanjuanita Justiniano arrived and saw a "crowd developing." She and Garcia turned Beasley over and began CPR. Firefighter paramedics then arrived and took over administering lifesaving aid to Beasley before transporting him to the hospital. Beasley ultimately survived, but he suffered life-altering injuries.

As they worked on Beasley at the scene, one of the firefighters pointed out to Sergeant Justiniano that Beasley had a firearm in his pocket. The sergeant retrieved the gun, found it loaded, and secured it in the trunk of her car. Later, she gave the gun (a Taurus revolver) to crime scene technician Katherine Barnard, who arrived after Beasley had been taken to the hospital. Barnard also collected plastic baggies of suspected marijuana and cocaine from where Beasley had been located on the ground. But Barnard found no "physical evidence" at the scene to connect Beasley to the gun or drugs.

Beasley, who has no recollection of these events, maintains that the evidence fails to establish that he knowingly possessed the gun or drugs and suggests that these items could have been planted by others before the police arrived. In support, he points to two eyewitness statements arguably relating to that period. One

eyewitness told Officer Garcia that he saw "three fellows . . . walking up" to Beasley after the shooting. "[O]ne of them" was about "to go and check on [Beasley]," but he "jogged away" when he saw the police arrive. The eyewitness asked the man why he was running, and he replied, "[M]an, the cop, but it's a dude over here laid out." Another eyewitness provided a written statement that, after hearing a gunshot and walking into the parking lot, he "saw the victim laying face down w/ other civilians on scene checking vitals." Nevertheless, Sergeant Justiniano testified that, based on her observations at the scene, there was no reason to believe anyone had moved Beasley or planted a gun on him before officers arrived.

Regarding the premises, in the area where Beasley parked his car, Wells Fargo had posted signs stating, "drive-up services Wells Fargo accountholders only," and "parking for Wells Fargo customers only." Beasley was not a Wells Fargo accountholder. Nevertheless, the parking lot was frequently used as additional parking for nearby bars and restaurants. Wells Fargo did nothing to actively discourage such parking, such as towing vehicles or erecting barriers. An ATM machine was also located on the premises and was available for use by the public 24 hours a day.

Following Beasley's shooting, Beasley filed a premises-liability action for negligent lighting and security in the parking lot. He alleged that the defendants were liable for his injuries because, when the shooting happened, the parking lot was owned by Lilac and managed and controlled by Wells Fargo. The parties dispute whether Lilac owns or controls the premises, but we need not

address that issue, which did not matter to the district court's judgment.

Rather, the district court entered summary judgment in favor of the defendants for two reasons unrelated to ownership or control of the premises. First, the court concluded that Beasley's negligence claims were statutorily barred by Florida Statute § 768.075 because "uncontroverted evidence" established he was committing a felony on the property at the time of his injury—namely, possession of a firearm and ammunition as a convicted felon.

Second, the district court determined that, even if the affirmative defense of § 768.075 did not apply, Beasley still could not prove negligence. In particular, the court reasoned that Beasley was at best an "uninvited licensee," not an "invitee," because he used the bank parking lot for his own convenience to visit a nearby bar. And in the court's view, the evidence failed to show that the defendants breached the lower duty of care owed to an uninvited licensee. This appeal followed.

## II.

We review a grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1317 (11th Cir. 2015). Summary judgment is appropriate when the record shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

For a dispute to be "genuine," "there must be more than some metaphysical doubt as to the material facts." *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1111 (11th Cir. 2016) (quotation marks omitted). Thus, "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation marks omitted). But "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Dean-Mitchell*, 837 F.3d at 1111–12.

## A.

The district court concluded that Beasley's negligence claims were barred by the felony defense in Florida Statute § 768.075(4). We agree.[1]

Section 768.075(4) states that a property owner "shall not be held liable for negligence that results in the death of, injury to, or damage to a person who is attempting to commit a felony or who is engaged in the commission of a felony on the property." Fla. Stat. § 768.075(4). "The plain language of the statute bars recovery for any person who commits a felony on the property, not just a

---

[1] Beasley's negligence claims arise under Florida law, which is the substantive law we apply in this diversity case. *See Carlson*, 787 F.3d at 1326.

person whose injury arises out of the commission of a felony." *Kuria v. BMLRW, LLLP*, 101 So. 3d 425, 427 (Fla. 1st DCA 2012); *see Pride of St. Lucie Lodge 1189, Inc. v. Reed*, 306 So. 3d 115, 117–18 (Fla. 4th DCA 2020) (explaining that no "causal nexus" is required between the felony and the injury).

In Florida, possession of a firearm or ammunition by a person who has been convicted of a felony is a second-degree felony. Fla. Stat. § 790.23(1), (3).  It is undisputed that Beasley had been convicted of multiple felonies before the night of his injury.  So if Beasley knowingly possessed a firearm at the time he was shot, he was "engaged in the commission of a felony on the property" within the meaning of § 768.075(4).  *See Kuria,* 101 So. 3d at 427; *Pride of St. Lucie*, 306 So. 3d at 117–18.

Here, the district court properly granted summary judgment to the defendants on the felony defense under § 768.075(4). The defendants presented evidence that Beasley was in possession of a loaded gun in the parking lot when he was shot.  Specifically, Sergeant Justiniano testified that she retrieved a loaded gun from the pocket of Beasley's sweater after one of the firefighters giving emergency aid to Beasley pointed it out to her.[2]

---

[2] The defendants also proffered Beasley's testimony during hearings in the state prosecution against Lee, where Beasley admitted that, while he did not remember the night in question, he likely possessed a firearm for protection and drugs for sale.  The district court, however, arguably excluded this evidence when it granted in part Beasley's motion in limine on November 4,

Beasley's attempts to create a genuine issue of material fact about his possession of the gun are unavailing. That no "physical evidence" from the scene connected Beasley to the gun, such as fingerprint analysis or gun-shot residue testing, does nothing to cast doubt on Justiniano's direct testimony about her recovery of the gun from Beasley's person. Likewise, the absence of information about the gun in either the fire department's report, which described the emergency medical treatment provided to Beasley, or the police report of Officer Flanagan, who did not recover or see the gun, does not contradict or cast doubt on Justiniano's testimony. Nor do we see any material contradictions or ambiguities in her testimony about where and how she recovered the gun from Beasley's person soon after the shooting on November 17, 2018.[3]

Moreover, Beasley's claim that the gun did not belong to him and could have been planted on him is merely a "guess or possibility," not a reasonable inference from the record. See Daniels, 692 F.2d at 1324. At best, Beasley presented evidence that other civilians were in the area and had "check[ed]" on him during the

---

2021. In any case, the court did not appear to consider or rely on Beasley's state-court testimony, and neither do we.

[3] Because the evidence shows the gun was found on Beasley's person, not simply in close proximity to him in the parking lot, Beasley's reliance on case law involving constructive possession and jointly occupied premises is misplaced. See N.G.S. v. State, 272 So. 3d 830, 835 (Fla. 2d DCA 2019) ("A person actually possesses an item when it is in his hand, on his person, or within his reach and under his control.").

few minutes before police arrived. An eyewitness reported that one person in a group of "three fellows" went "to go check on" Beasley but then "jogged away" when Officer Garcia arrived. Another eyewitness "saw the victim laying face down w/ other civilians on scene checking vitals." But neither eyewitness described anything consistent with a person planting a gun on or near Beasley. To be sure, the eyewitness statements do not conclusively rule out that possibility. But "there must be more than some metaphysical doubt as to the material facts." *Dean-Mitchell*, 837 F.3d at 1111. Neither these statements nor the record more broadly supports a reasonable inference that Beasley was unaware of the gun found on his person.

Because undisputed record evidence reflects that Beasley was engaged in the commission of a felony at the time of his injury by possessing a firearm as a convicted felon, his claims for negligence are statutorily barred. *See* Fla. Stat. § 768.075(4); *Pride of St. Lucie*, 306 So. 3d at 117–18; *Kuria*, 101 So. 3d at 427.

**B.**

The district court concluded in the alternative that, even if the felony defense did not apply, Beasley's negligence claims failed on the merits because he was, at best, an uninvited licensee. Again, we agree.

Under Florida law, visitors who enter private property fall into one of three categories: invitees, uninvited licensees, and trespassers. *Charterhouse Assocs., Ltd., Inc. v. Valencia Reserve*

*Homeowners Assoc., Inc.*, 262 So. 3d 761, 764 (Fla. 4th DCA 2018); *see Wood v. Camp*, 284 So. 2d 691 (Fla. 1973); *Post v. Lunney*, 261 So. 2d 146, 147–48 (Fla. 1972). The duty of care owed by the landowner varies according to the entrant's status. *Arp v. Waterway East Ass'n, Inc.*, 217 So. 3d 117, 120 (Fla. 4th DCA 2017).

The highest duty of care is owed to "invitees," who enter pursuant to an invitation. *Fisher v. United States*, 995 F.3d 1266, 1270 (11th Cir. 2021); *Charterhouse Assocs, Ltd.*, 262 So. 3d at 765. But "[t]he only duty a landowner owes to a trespasser or uninvited licensee is to avoid willful or wanton harm to him and, upon discovery of his presence, to warn him of any known dangers which would not be open to his ordinary observation." *Arp*, 217 So. 3d at 120.

"An invitee is a visitor on the premises by invitation, either express or reasonably implied, of the owner." *Id.* "An 'invitation' means that the visitor entering the premises has an objectively reasonable belief that he or she has been invited or is otherwise welcome on that portion of the real property where injury occurs." *Id.* (quoting Fla. Stat. § 768.075(3)(a)1.). A visitor has such a reasonable belief where "the premises were intended to be used by visitors for the purpose which this entrant was pursuing, and that such use was not only acquiesced in by the owner or possessor, but that it was in accordance with the intention and design with which the way or place was adopted or prepared." *Id.*

"An uninvited licensee is a person who chooses to come upon the premises solely for his or her own convenience without

invitation either expressed or reasonably implied under the circumstances." *Id.* at 120–21 (cleaned up). The person's "presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner." *Bishop v. First Nat'l Bank of Fla., Inc.*, 609 So. 2d 722, 725 (Fla. 5th DCA 1992). Thus, a landowner's awareness or tolerance of a use of property is not sufficient on its own to establish a reasonably implied invitation. *See, e.g.*, *id.* (no reasonably implied invitation even though the area where the plaintiff was injured "was continually used by the public as a recreational area and such use was known by the landowner"); *Barrio v. City of Miami Beach*, 698 So. 2d 1241, 1244 (Fla. 3d DCA 1997) (no reasonably implied invitation to be at the beach after posted hours even though the City was aware of after-hours visitors and "did nothing to actively discourage such visitation"); *Libby v. W. Coast Rock Co., Inc.*, 308 So. 2d 602, 604 (Fla. 2d DCA 1975) ("[T]he bare conclusion that the defendants had 'impliedly invited the citizens of the area' to use the premises by allowing them to remain open for use by the public as a 'lovers' lane' cannot serve to further elevate Libby's status to that of an invitee.").

Here, the district court did not err in granting summary judgment. The evidence, even viewed in the light most favorable to Beasley, shows that Beasley was, at best, an uninvited licensee because he used the Wells Fargo parking lot for his own convenience without an express or reasonably implied invitation. *See Arp*, 217 So. 3d at 119–20.

Undisputed evidence establishes that Beasley was not present on the property for any business with Wells Fargo. His claim on appeal that he intended to use the 24-hour ATM is contradicted by the record and his own statement of facts, which both reflect that Beasley parked in the Wells Fargo parking lot for his own convenience so he could visit the nearby Wet Spot bar.[4]

Nor does the record support an express or reasonably implied invitation to engage in public parking on the property. There is no evidence that, at the time of the injury, public parking "was in accordance with the intention and design with which the [parking lot] was adopted or prepared." *Arp*, 217 So. 3d at 120. No agreement or signage authorized public parking at the time of Beasley's injury.[5] Rather, Wells Fargo had posted signs stating that the area where Beasley parked was for Wells Fargo customers only.

---

[4] Beasley repeatedly asserts that Lilac "admitted" that the parking lot was "held open" to the public for the purpose of generating "foot traffic." But for support he merely points to an assertion by Lilac's attorney in a motion to dismiss, which, in turn, referenced an allegation in the complaint. He does not provide evidence of his foot-traffic theory. Plus, the motion to dismiss simply admitted that Wells Fargo was open to foot traffic for use of its ATM and night depository services. And there is no evidence Beasley was on the premises to use those services.

[5] Beasley relies on a purported verbal agreement between the City of Sanford and the premises owner, under which the City agreed to maintain the parking area so that parking could remain open to the public. However, the district court correctly found that this agreement was not relevant to the case because it occurred *after* the date of Beasley's injury. Plus, it's not clear that such an agreement would be enough to show an invitation. *See Libby*, 308 So .2d at

That these signs may have been inadequate to deter public parking, or that nothing else was done to deter regular use of the lot for public parking, is not enough to establish a reasonably implied invitation under Florida law. *See id.* at 122 ("[T]he absence of a 'No Trespassing' sign does not constitute an implied invitation by the owner."); *Barrio*, 698 So. 2d at 1244 (no reasonably implied invitation even though the City "did nothing to actively discourage" visitation); *Bishop*, 609 So. 2d at 725 (no reasonably implied invitation from "continual[] use[] by the public as a recreational area"); *Libby*, 308 So. 2d at 604 (no reasonably implied invitation from allowing an area "to remain open for use by the public as a 'lovers' lane'"). Beasley's evidence shows at best that his presence was "neither sought nor forbidden, but merely permitted or tolerated by the landowner"—that is, that he was an uninvited licensee.[6] *Bishop*, 609 So. 2d at 725.

---

604 (no reasonably implied invitation from allowing an area "to remain open for use by the public as a 'lovers' lane'").

[6] Citing a district-court decision, Beasley questions whether the uninvited-licensee status remains valid under Florida law. *See Seaberg v. Steak N' Shake Operations, Inc.*, 154 F. Supp. 3d 1294, 1300–01 (M.D. Fla. 2015). Since that decision, however, Florida appellate courts have continued to apply the uninvited-licensee status. *E.g.*, *Arp v. Waterway East Ass'n, Inc.*, 217 So. 3d 117, 120–22 (Fla. 4th DCA 2017). In any case, eliminating the uninvited-licensee status would not bump Beasley up to an invitee, since the evidence fails to show an express or reasonably implied invitation. *See id.* at 120. Rather, it appears his status would be equivalent to that of a discovered trespasser, which requires no higher standard of care than an uninvited licensee. *See* Fla. Stat. § 768.075(3)(a)2., (3)(b); *Bishop v. First Nat'l Bank of Fla., Inc.*, 609 So. 2d

For these reasons, the district court properly concluded that Beasley was not an invitee, and that the defendants owed him only a duty "to avoid willful or wanton harm to him and, upon discovery of his presence, to warn him of any known dangers which would not be open to his ordinary observation." *Arp*, 217 So. 3d at 120. The court reasoned that the evidence failed to show a breach of that duty of care, and Beasley has abandoned any challenge to that ruling by failing to address it on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not briefed on appeal are deemed abandoned). So we affirm the court's resolution of that issue without further discussion. *See id.*

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Wells Fargo and Lilac on Beasley's claims of negligent security.

**AFFIRMED.**

---

722, 724 (Fla. 5th DCA 1992) ("What remains of the licensee category is the uninvited licensee and its twin, the discovered trespasser.").