518 So.2d 1348 (1987)
Lazaro VAZQUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-1435.
District Court of Appeal of Florida, Fourth District.
December 30, 1987.
Rehearing Denied February 17, 1988.
Richard L. Jorandby, Public Defender, and Marcy Allen, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Alfonso M. Saldana, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
The defendant appeals his judgment and sentence for attempted aggravated battery, two counts of aggravated assault with a firearm, and carrying a concealed firearm. The jury found Vazquez guilty on all counts. He was sentenced to four concurrent three-year prison terms, those on the first three counts being mandatory minimums. The terms were also to be served concurrently with prison terms pending under a separate conviction. The issues as to sentencing are moot. We reverse the conviction because of the failure of the trial court to instruct, as requested, on the defense of self-defense, although we acknowledge the failure of defense counsel to call the omission to the trial court's attention. In sum, we think the request and the subsequent failure so to instruct combined to constitute fundamental error. We remand for new trial.
Rufus Pridgen, a security guard at Troy's Lounge, testified that on April 23, 1984, he was at Troy's Lounge although off duty at the time. While seated at the bar, he was approached by appellant Lazaro Vazquez' girlfriend, Barbara Perkins. Appellant came up and asked why Pridgen was talking to Perkins. Appellant was angry and wanted to fight. Appellant and Pridgen walked in the direction of Pridgen's car. Pridgen approached his vehicle, appellant drew a handgun from underneath the back of his sport coat and began shooting at Pridgen. Pridgen estimated that three shots were fired from a distance of fifteen to twenty feet. Then appellant's gun jammed. Appellant ran around the building and into another Troy Lounge security guard, Eddie Lewis. Meanwhile, Pridgen removed a .38 caliber Smith and Wesson handgun from his vehicle trunk and went over to Lewis and appellant. Lewis ordered Pridgen to drop the weapon. He complied.
Appellant broke free from Lewis and continued around the building where he encountered another security guard, Larry Singleton. Singleton ordered appellant to *1349 drop his weapon. Appellant made no effort to do so. Singleton then fired his gun, striking appellant.
On cross-examination, Pridgen testified that upon leaving Troy's Lounge he headed toward his car because he wanted to be closer to his gun. On redirect examination, Pridgen was permitted to testify over objection that Perkins had previously told him that if Vazquez caught Pridgen and Perkins together he would shoot them both.
Eddie Lewis testified that he heard three or four gun shots. Then appellant ran up to him. Lewis grabbed appellant and told him to drop his gun. Lewis did not know whether appellant's hand was frozen with the gun pointing in the general direction of Lewis' head. Lewis was scared as appellant pointed the gun at him. Lewis further testified that Pridgen approached with a gun. He told Pridgen to put it away. Pridgen complied. Thereafter appellant broke free and ran. Singleton subsequently fired two shots at appellant, who, bleeding, fled into the lounge.
Lawrence Singleton, the other Troy's Lounge security guard, testified that he heard shots. He saw appellant, who pointed a gun at him. He ordered appellant to drop his weapon. Appellant began to raise his hand waist high, at which point Singleton shot appellant three times.
Mary Ann Powell, a kitchen employee of Troy's Lounge, testified that she heard shots being fired. She went to the kitchen door where she saw three men standing in the parking lot. Initially Ms. Powell testified that she did not see Pridgen's hands. Over appellant's objection, the prosecutor was permitted to examine Powell several times concerning a prior statement that she saw Pridgen's hands on his hips.
The prosecutor called crime scene investigator, Robert Burke, as a witness. He drew a diagram of the area and testified as to photographs he took on the evening of the incident. Additionally, he recovered two firearms at the scene as well as several cartridges. At the hospital he recovered additional projectiles. He testified that the only person wounded was appellant.
State's witness, Patrick Garland, an expert in firearm identification, testified that he received the weapons and cartridges recovered in this case. After testing the two casings and weapons, he determined which projectiles and casing had been fired by which weapon. He testified on cross-examination that he had no difficulty firing the gun allegedly used by appellant.
Appellant testified on his own behalf that he went to Troy's Lounge with several friends. He was at the bar when Pridgen told appellant that he wanted to speak with him about Barbara Perkins. He asked appellant to step outside. Pridgen was drunk. Appellant testified that he had seen Pridgen with a gun before; that he followed Pridgen outside the bar to Pridgen's car; that Pridgen opened the trunk of his car, removed a gun and faced appellant; that a struggle ensued between the two men; that during the struggle, two (2) to three (3) shots were fired; that appellant gained control of the weapon and fled; and that meanwhile Pridgen went into his car.
Appellant ran into Eddie Lewis, a security guard who held him around the waist. Appellant denied pointing a weapon at Lewis. At this time, Pridgen approached with a gun and threatened appellant. Lewis let go of appellant and appellant ran toward the Lounge. Singleton told appellant to stop and appellant complied still holding the handgun. Singleton then shot appellant three times, wounding his hand and stomach. On cross-examination, appellant explained that he was in a state of shock during much of this incident.
Edel Borroto testified on behalf of appellant that he accompanied appellant to Troy's Lounge. In the lounge, he saw appellant and Pridgen talking. He could not hear most of their conversation until Pridgen asked appellant outside. Although he did not see who fired the shots, Borroto testified he saw Pridgen and appellant struggling and heard the shots fired.
The state recalled firearm arms expert, Patrick Garland as a rebuttal witness. He *1350 testified that the weapon attributed to Vazquez and Pridgen expels its cartridges to the right and slightly forward, and the cartridges land five to seven feet away.
As to his conviction, of the two issues raised by the defendant, we opt to discuss only the issue whether the trial court erred in failing to instruct the jury of the affirmative defense of self-defense.
Appellant requested during the charge conference that the jury be instructed on the affirmative defense of self defense. The trial judge indicated he would so instruct the jury; and at the close of the charge conference the judge said he was going to his office to see what he could do on self-defense.
After a brief recess and prior to the actual charge to the jury, the court presented to appellant and the state a package of instructions, and asked that they be sure to go over it and see if they both agree. There is no such instruction in the record before us. Appellant did not call the omission to the court's attention, nor did he object prior to the jury's retirement to consider the verdict, as Florida Rule of Criminal Procedure 3.390(d) requires.
Appellant correctly states the law: a defendant who requests a jury instruction on the theory of his defense is entitled to have it, so long as there is evidence in the record to support that theory, however flimsy that evidence may be. See, e.g., Holley v. State, 423 So.2d 562 (Fla. 1st DCA 1982); Dudley v. State, 405 So.2d 304 (Fla. 4th DCA 1981). The state does not deny that there was sufficient evidence supporting a self-defense theory to warrant giving the requested instruction. Be that as it may, since there was no contemporaneous objection, the error would have to be fundamental for this issue to be considered now, as it was not preserved for appeal.
As might be expected, the parties disagree as to whether the failure to give the requested instruction constitutes fundamental error. There appears to be no case law directly on point. However, we stress the fact here that appellant requested an instruction on self-defense; and the evidence warranted the giving of same. The decision here is not authority for reversal in a situation in which no request for the instruction has been made.
There is authority for the proposition that failure to give an instruction on a necessarily included lesser offense is not excused unless the defendant has expressly waived such instruction. Lomax v. State, 345 So.2d 719 (Fla. 1977); Weller v. State, 501 So.2d 1291 (Fla. 4th DCA 1986). If omission of a necessarily lesser included offense instruction is considered per se prejudicial error, omission of an instruction on self-defense where there was evidence in support of such a defense theory and where such an instruction was requested is logically fundamental error. Cases cited herein do not directly confront a failure contemporaneously to object, but only eliminate the possibility of classifying the error referred to as harmless. Our reasoning is, however, that the possibility of jury pardon is more greatly involved when instruction on a theory of self-defense may result in acquittal than when instruction on a lesser included may result in a verdict of guilty of a lesser offense than was charged.
It may also be reasoned that in a practical sense the court here, by neglecting to give the self-defense instruction, has invaded the jury's prerogative by taking an evidentiary matter out of its hands. Acquittal for lack of sufficient evidence against the defendant to eliminate reasonable doubt is not the same thing as acquittal on the reasoning that the act was one of self-defense. It is important that the jury be aware that self-defense is something it should consider in its deliberations, whenever there is any evidence in that direction. We reject the contention that it is not fundamental error to omit a requested instruction that plausibly could have resulted in a not guilty verdict at least on the attempted aggravated battery count, and possibly on all but the last count.
*1351 The reasoning in Weller, concerning failure to instruct on the entrapment defense, rests on the fact that the question of predisposition, so important in entrapment situations, is always a question for the jury. See Cruz v. State, 465 So.2d 516, 519 (Fla. 1985). Similarly, we think that if there is any evidence in support of a self-defense theory the jury must have an opportunity consciously to determine whether the acts of the defendant are excused on the grounds of self-defense. In terms of the definition of "fundamental error" in Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970), albeit that is a civil case, absence of the instruction on the defense of self-defense goes to the merits of the case.
There were a few errors in the sentencing of appellant which we discuss, although moot by the foregoing conclusion, to put the matter to rest. First, the transcript herein reveals a clear intention of the trial judge not to aggravate appellant's sentence; accordingly the sentence for carrying a concealed weapon was erroneous. Second, attempted aggravated battery is a third degree felony, not second as the judgment and sentence form recites. Third, the written sentence was not that which was orally pronounced.
DELL and GUNTHER, JJ., concur.