717 So.2d 193 (1998)
Shawn ARTHUR, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3390.
District Court of Appeal of Florida, Fifth District.
September 18, 1998.
*194 J. Stephen Alexander, St. Augustine, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven J. Guardiano, Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, Judge.
Shawn Arthur appeals his conviction and sentence for aggravated assault, section 784.021(1)(a), Florida Statutes (1995). He alleges that the trial court improperly denied his request for a standard jury instruction on self-defense, to wit: instruction 3.04(e), justifiable use of non-deadly force. We agree, vacate the conviction and sentence, and remand for a new trial.
Arthur and his girlfriend, Ericha Schmidtt, were in a pool hall with some friends, drinking beer, when an argument erupted between the two. The manager asked them to leave and in compliance Arthur grabbed Ericha by the arm and took her in tow. Some of the bar patrons thought that Arthur's treatment of Ericha was overly physical and began to make comments which in turn drew obscenities from Arthur.
One patron was particularly disturbed by Arthur's actions and unleashed a verbal assault on him indicating that she had been physically abused in the past and that he was not going to abuse Ericha. She followed him and Ericha from inside the hall to the parking lot where Arthur's pickup truck was parked. As the verbal exchange continued it drew spectators from inside the hall. Witnesses' descriptions of what happened next differs. Arthur claimed that the matter got out of hand because of the patron upset with Arthur and that the crowd in the bar, armed with cue sticks and bottles of beer, followed her outside into the parking lot. He testified that he was in fear that the crowd would attack him and his truck and that all he wanted to do was leave. He reached in his truck for a stick in order to protect himself and found an old loaded shotgun that he had forgotten about behind the seat. He claims he displayed the shotgun without pointing it at anyone, which caused the crowd to disperse. As he and Ericha were departing in the truck, the police arrived and arrested him. Ericha's testimony echoed Arthur's account.
The victim's account is different. The victim claimed that the crowd was few in number, that he did not notice any potential weapons in their hands and that they all stayed at the doorway of the pool hall. Only the patron mentioned by Arthur as provoking the confrontation, and himself, were next to Arthur's truck. The victim claimed that Arthur pointed the shotgun at him.
Arthur's theory of defense was that he wanted to protect himself from the crowd that had formed against him and who were impeding his escape from the parking lot. Accordingly, he requested the self-defense instruction to be read to the jury, but the request was denied. The denial was error.
The law regarding whether or not to instruct the jury on a particular defense theory is well settled. "Where there is any evidence introduced at trial which supports the theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory of defense when he so requests." Bryant v. State, 412 So.2d 347, 350 (Fla.1982) (citing Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945)). A defendant is entitled to an instruction on his theory of defense "however flimsy" the evidence is which supports that theory, Vazquez v. State, 518 So.2d 1348, 1350 (Fla. 4th DCA 1987), or however "weak or improbable his testimony may have been" Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982). It is for the jury, not the court, to determine what weight to give the defendant's evidence. Vazquez, supra.
*195 In the instant case, Arthur clearly introduced sufficient evidence to support the instruction on the justifiable use of non-deadly force. The state charged Arthur with aggravated assault, alleging that he had pointed his shotgun at the victim. Arthur and his girlfriend told a different story, however. Arthur denied ever having pointed the shotgun at the victim as an individual but admitted threatening a crowd with the gun. Arthur further testified that he had no fear of the victim as an individual but that he was afraid of the crowd that was gathering around him, his girlfriend, and his truck immediately prior to his display of the shotgun. Having introduced evidence that he only used non-deadly force in the face of a fear of imminent bodily harm, Arthur was entitled to a jury instruction that his actions were legal under those circumstances. By denying the requested instruction, the trial court essentially removed from the province of the jury the factual question of whether Arthur only used the gun to make the crowd disperse so that he and his girlfriend could leave the parking lot in his truck.
The state contends that this particular argument was not raised below and therefore is waived on appeal. Upon review of the record, it appears that defense counsel at least attempted to argue that the instruction was appropriate based on the fact that the state had originally alleged that three individuals were around the defendant when he displayed the gun. The trial court seems to have understood defense counsel's admittedly vague argument that, because the state had originally included two other victims, at least a small crowd was present to sufficiently frighten Arthur into displaying a gun. This argument, therefore, was not waived and Arthur is entitled to raise it here on appeal. Additionally, it appears further argument on this issue would have been pointless. State v. Heathcoat, 442 So.2d 955, 957 (Fla.1983).
REVERSED.
DAUKSCH, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, Judge, dissenting.
This record, in my view, does not justify an instruction on self defense, perhaps for two reasons. First, there was no real evidence of imminent peril, even from the crowd; second, even if brandishing the shotgun at the crowd was justified, Arthur denied that the specific aggravated assault charged in this action took place.
Arthur testified that after the dispute between himself and his girlfriend inside the bar generated some animosity with a woman patron, Monika, he and his girlfriend left. He further testified that a group of patrons of the bar, including Monika, followed him outside carrying beer mugs, beer bottles and cue sticks. Since they were exiting a bar/poolhall, the fact that the patrons retained their drinks and cue sticks, in and of itself, does not seem all that ominous. Arthur testified:
A. I was scared. I was scared for my life.
I put my girlfriend in the truck and said we are fixing to leave and they come around my truck, surrounded my truck. I was like, "You-all get away from my truck." I was going to leave. They kept coming to me, kept coming around my truck. I was going to get in my truck and leave. They were hollering, my friends, "Jump in the truck and run them all over and get out of there," and when they left I was stuck there by myself, me and Ericha.
I was afraid that they were going to hurt me or her or hit my truck or something. I was like, "Get away from my truck."
I looked for a stick, you know, to defend myself and in the back seat, I had forgot it was there. You know, it must have been there a week or two behind the seat.
Q. This is a beat up old shotgun. Is this the way you treat your guns?
A. No. That's an old raggedy thing I hadwe was rabbit hunting with a week prior to that. I forgot it was behind my seat. Luckily I did find it to keep these people off of me. And

*196 Q. What did you do with it when you pulled it out?
A. I said, "Hey, you-all better get the `f' away from me. I am trying to leave. I want to go home. Get away from me." They just kept surrounding the truck and the little guy Barker, come through, he hobbled through all drunk and discombobulated. You could have blowed on him and knocked him down. He was the one that talked to me. There was no problem, you know, we don't want any problems. Put your gun away and I did, I was leaving. By that time the cops come in and I stopped right there. I mean, I let the cop come in, he went towards the parking lot through here. I am right here at the entrance all ready parked out there and ready to go, and the cops are coming in and they are all pointing at me, "That's the man, that's the man," so I turned the truck off right there and stepped out of the vehicle.
Q. You didn't try to get away?
A. No. I mean, I knew when I seen them there, I wasn't going to escape or run or nothing like that. I wasn't going to make matters worse.
Q. Did you ever point the gun at anybody?
A. No, sir, I didn't.
Q. Did you ever tell anybody you'd kill them?
A. No, sir.
What is missing from Arthur's testimony is any indication that anyone in the crowd ever threatened him, his girlfriend, or even his truck. From his testimony, it appears that even though one woman was upset with him for abusing his girlfriend, the other patrons of the bar merely came out to look. He did not indicate that anyone verbally threatened him or prevented or attempted to prevent him from getting into his truck and driving away. According to his testimony, the only crowd spokesman, the little "drunk guy," Barker (the victim in this case), told him they wanted no problem and for him to put his gun away. He did so, according to him, and without any difficulty from the crowd, was on his way out of the area when the police arrived. Even his own testimony does not show a present danger at the time he brandished the shotgun.
Perhaps in his condition (he had had several drinks by then) the mere presence of the onlookers was threatening. This brings us to the second reason an instruction on self defense was unjustified. Arthur was not charged with brandishing the shotgun at the crowd. He was charged specifically with assaulting Barker with the shotgun.
Barker testified that when he approached Monika, who was arguing with Arthur, and attempted to get her to leave, Arthur pointed the shotgun at him and threatened him. Barker testified that he was praying that Arthur would not pull the trigger.
This is the aggravated assault charged in this action and Arthur's defense was that it never happened. He testified that he never pointed the shotgun at Barker and he never threatened Barker. It is settled law in this state that if the accused denies the commission of the charged offense he is not entitled to an instruction on self defense. See Abbott v. State, 589 So.2d 943 (Fla. 2d DCA 1991). The issue would be different had Arthur admitted the assault on Barker but claimed that he feared Barker because Barker was a part of the crowd that was threatening him and thus self defense should excuse such assault. Arthur should not be able to deny the charge and, at the same time, claim that he committed the act to defend himself.