SIXTH DISTRICT COURT OF APPEAL

_____

Case No. 6D2023-2239
Lower Tribunal No. CF18-000632-XX

_____

COREY STEPHEN SMITH,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Polk County.
Sharon M. Franklin, Judge.

June 27, 2025

MIZE, J.

Appellant, Corey Stephen Smith ("Smith"), appeals his conviction for aggravated battery with a firearm causing great bodily harm. Smith asserts that the trial court erred when it denied Smith's requested jury instruction on self-defense and when it denied Smith's attempt to offer evidence of a threat that was made against him prior to his use of force against the alleged victim. We agree with Smith

1

on both arguments.[1]  Accordingly, we reverse his conviction and remand this case to the trial court to conduct a new trial.

## Background and Procedural History[2]

Smith lived directly behind the residence of the mother ("Ms. Stanley") of Amelia Stanley ("Amelia") and Benjamin Stanley ("Benjamin").  Smith's home and Ms. Stanley's home were separated by a chain link fence approximately four-feet high.  Amelia and Benjamin have both known Smith since they were children. Throughout their years as neighbors, Smith would often visit Ms. Stanley's home by jumping over the fence and entering through a screened-in patio in the back of the house.

On the night of the incident that gave rise to the proceedings below, Amelia and Benjamin were on the back patio of their mother's residence.  Amelia's boyfriend, Brent Moore ("Moore"), and Benjamin's friend, Dayner Delgado-Fernandez ("Delgado"), were also present.  Smith knew both Moore and Delgado

---

[1] Smith also argues that the trial court committed two other errors.  Smith did not preserve these errors in the trial court, but he argues that they constitute fundamental error that we may review despite the lack of preservation. *See Steiger v. State*, 328 So. 3d 926, 929-30 (Fla. 2021).  Because the errors which Smith did preserve and which are addressed in this opinion are sufficient to warrant reversal of his conviction, we decline to reach or conduct a fundamental error analysis regarding the errors which he asserts are fundamental.

[2] The factual background in this opinion is not exhaustive of all of the facts and evidence presented in the proceedings below.  We have included the factual background necessary to explain our decision.

and both men considered themselves on friendly terms with Smith. Both Moore and Delgado were bigger and stronger than Smith. Smith was five-foot four-inches tall and skinny. Moore was six-feet tall and weighed more than 200 pounds. Delgado was five-feet six-inches tall, weighed 220 pounds, and had trained in multiple types of martial arts.

On the night of the incident, Benjamin, Moore and Delgado were drinking beer and chatting on the patio. Delgado had also smoked marijuana. Amelia was present but did not drink alcohol or consume any drugs.

At around 12:30 a.m., Smith hopped over the fence between the yards and joined the group on the patio where he was welcomed by the group and invited to sit down. Not long after he arrived, Smith left and went to his house to retrieve some additional alcohol and drugs. At some point after he returned, a verbal altercation occurred. As a result of the altercation, Benjamin told Smith to leave. After two to three minutes of resisting and arguing, Smith got up to leave with Benjamin walking toward him, but as Smith left, he threw a bong at Benjamin. The bong broke and Smith left. It was made clear to Smith that he was not welcome on Ms. Stanley's property anymore.

Ten or fifteen minutes later, Smith returned. The group had gone inside the house and Smith came back into the patio area by himself. The group went back outside to the patio and Smith told them, "Hey, guys, I just want to grab my stuff.

3

Can I grab my stuff?" Moore responded to Smith, "Yes, okay, come get your stuff and then leave. You're not welcome here." The group then helped Smith gather his cans of beer and his bottle of vodka. Amelia showed Smith pieces of the bong in a dustpan, and Smith tried to take the dustpan from her, saying that he would take it home. Amelia offered to put the pieces in the garbage, and Smith became angry.

Delgado testified that Benjamin and Smith were arguing, and that Benjamin and Moore moved toward Smith. Benjamin testified that Moore began "rushing toward" Smith. Smith was six to seven feet away from Moore when Moore began moving toward him. Benjamin and Amelia were trying to hold Moore back. At one point, Moore "lunged" toward Smith and "tried to grab for him." Benjamin further testified that Smith appeared to be afraid of Moore. In Moore's testimony, he denied rushing toward or lunging at Smith and stated that he did not intend any harm to Smith.

Smith began to walk backwards into the yard and the others followed him. Delgado testified that someone shoved Smith out of the patio door. Smith lost his footing and fell to the ground outside of the patio door. Delgado testified that he walked out of the patio door and toward Smith. The group formed a half-circle around Smith. Delgado was about "two steps" away from him, and Benjamin was closer.

4

At some point, Smith pulled a gun from his waistband and fired it. Moore was shot in his lower back. Delgado lunged toward Smith and grabbed the gun, telling Smith to give it to Delgado. Smith let go of the gun and Delgado hit him, knocking him down, and then tried to kick him. Smith got up and ran back to his house. Moore survived the gunshot wound.

The State filed an Information charging Smith with aggravated battery with a firearm resulting in great bodily harm. Smith pled not guilty and subsequently filed a motion to dismiss under Section 776.032(1), Florida Statutes (2017), asserting that he was justified in his use of force and was, therefore, immune from prosecution. Delgado testified at the hearing on the motion and was asked if anyone was "threatening to break [Smith's] neck or bust his bones or anything like that?" Delgado answered: "I mean, kind of like an easy thing to say when somebody throws a bottle at you. 'I'm going to beat you up.' . . . But nobody was going to say they were going to kill him. Nothing like that." On cross-examination, Delgado testified that the statement, "I'm going to beat you up," was in fact shouted at Smith by either Moore or Benjamin. The trial court found that Smith was not entitled to immunity from prosecution and denied Smith's motion to dismiss.

At Smith's trial, during Delgado's testimony, defense counsel asked Delgado if someone said they were going to beat Smith up. The State objected to the question on the ground that it called for hearsay, and defense counsel responded that the

statement was admissible under the excited utterance exception contained in Section 90.803(2), Florida Statutes. The trial court ruled that defense counsel could ask Delgado if he heard any threats toward Smith, but not "What was the threat?" Defense counsel stated that he would lay a predicate for the excited utterance exception and attempted to do so. When defense counsel subsequently asked Delgado, "did they make a threat," the State again objected based on hearsay. Defense counsel then asked Delgado if he heard a threat made. The State again objected based on hearsay. Defense counsel reiterated his argument that Delgado's statement from the motion hearing that Defense counsel was attempting to elicit – that someone shouted at Smith, "I'm going to beat you up" – was an excited utterance and fell within that exception to the hearsay rule. The trial court sustained the State's objection based on hearsay.

After Delgado's testimony was concluded, defense counsel asked the trial court to reconsider its hearsay ruling and allow the defense to recall Delgado to inquire about Delgado's testimony at the motion to dismiss hearing that Delgado heard someone shout at Smith, "I'm going to beat you up." Defense counsel argued that this statement was not hearsay because it was not offered to prove the truth of the matter asserted in the statement, i.e., that the speaker of the statement was going to beat Smith up. Rather, the statement was a threat offered to prove its effect on Smith, i.e., that it caused Smith to reasonably believe that his use of force was

6

necessary to prevent himself from being caused great bodily harm. The trial court

denied the defense's request to reconsider its ruling that the statement was hearsay.

As a result, Delgado was not recalled.

After both parties rested their cases, the trial court conducted a charge

conference. The defense requested that the jury instructions include Standard Jury

Instruction 3.6(f), Justifiable Use of Deadly Force, and the parties proceeded to

discuss which parts of the instruction were applicable to the case.[3] The defense

requested that the following portion of Instruction 3.6(f) be given to the jury:

> Smith was justified in using deadly force if he reasonably believed that
> such force was necessary to prevent imminent great bodily harm to
> himself. If Smith was in a place he had a right to be, then he had no
> duty to retreat and had the right to stand his ground.[4]

---

[3] The version of Florida Standard Criminal Jury Instruction 3.6(f) that was in effect at the time of the trial and the trial court and the parties used at the charge conference may be found in *In re Standard Jury Instructions in Criminal Cases–Report 2019-01*, 285 So. 3d 1248, 1251-58 (Fla. 2019).

[4] In Standard Jury Instruction 3.6(f), this paragraph of the instruction reads in full, "(Defendant) was justified in [using] [or] [threatening to use] deadly force if [he] [she] reasonably believed that such [force] [or] [threat of force] was necessary to prevent [imminent death or great bodily harm to [himself] [herself] [or] [another] [or] [the imminent commission of (applicable forcible felony listed in § 776.08, Fla. Stat.) against [himself] [herself] [or another]]. If (Defendant) was not otherwise engaged in criminal activity and was in a place [he] [she] had a right to be, then [he] [she] had no duty to retreat and had the right to stand [his] [her] ground." *In re Standard Jury Instructions in Crim. Cases*, 285 So. 3d at 1252. However, defense counsel did not request that the language pertaining to death, threat of force, or the imminent commission of a forcible felony be included in the instruction given to the jury. The State and defense also agreed that the language, "not otherwise engaged in criminal activity," should not be included.

*In re Standard Jury Instructions in Crim. Cases–Report 2019-01*, 285 So. 3d 1248, 1252 (Fla. 2019).

The State objected to this instruction, arguing that because Smith did not testify, there was no evidence that he reasonably believed that the use of force was necessary to prevent imminent great bodily harm to himself. The State stated at different points during the argument:

> So since he did not testify, I don't think that that instruction plays.
> . . . .
> How can he reasonably believe something based on testimony of other people?
> . . . .
> [T]he instruction that they want . . . requires the defendant believing. It's not a "reasonable person" belief. So if the defendant doesn't testify, we can't just say through testimony of other witnesses who can't read his mind, "this is what he must have been feeling."

The trial court itself also stated that Smith had been told to leave Ms. Stanley's property and, therefore, Smith was not in a place he had a right to be.

Defense counsel responded by arguing that there was sufficient evidence that Smith was in fear of imminent great bodily harm and that he was in a place he had a right to be such that he did not have a duty to retreat. Defense counsel pointed specifically to Moore's statement to Smith, "Yes, okay, come get your stuff and then leave," and the rest of the group's acquiescence and assistance to Smith in retrieving his belongings, as evidence that Smith regained permission to be on Ms. Stanley's property for the purpose of retrieving his belongings, which he was in the process of

doing when the altercation occurred. Defense counsel argued that Moore's statement and the group's corresponding acquiescence to and cooperation with Smith retrieving his belongings rendered Smith an uninvited licensee whose presence on Ms. Stanley's property was permitted even though not invited.[5] After hearing the arguments, the trial court denied the defense's requested instruction, and stated in its ruling that, "I'm finding he did not have a right to be there by the testimony that I've heard today."[6]

At the conclusion of his trial, the jury rendered a verdict of guilty on the charge of aggravated battery with a firearm causing great bodily harm. The trial court adjudicated Smith guilty and sentenced him to the mandatory minimum of 25 years in Florida State Prison. This appeal followed.

## Analysis

On appeal, Smith asserts that the trial court erred when it denied Smith's requested jury instruction and when it prohibited Smith from introducing testimony

---

[5] Defense counsel cited to *Charterhouse Associates, Ltd., Inc. v. Valencia Reserve Homeowners Association, Inc.*, in which the Fourth District stated that, "An uninvited licensee is neither an invitee nor a trespasser, but rather, a legal status in between whose presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner." 262 So. 3d 761, 765 (Fla. 4th DCA 2018) (quoting *Arp v. Waterway E. Ass'n, Inc.*, 217 So. 3d 117, 121 (Fla. 4th DCA 2017) (quoting *Bishop v. First Nat'l Bank of Fla.*, 609 So. 2d 722, 725 (Fla. 5th DCA 1992))).

[6] The trial court included in the jury instructions the other portions of Standard Jury Instruction 3.6(f) requested by Smith.

9

from Delgado about the threat that Delgado heard Moore or Benjamin shout at Smith. Smith is correct on both arguments.

## I. The Jury Instruction

"Generally, a trial court's decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion." *Vila v. State*, 74 So. 3d 1110, 1112 (Fla. 5th DCA 2011); *see also Espichan v. State*, 391 So. 3d 653, 656 (Fla. 6th DCA 2024); *Gonzalez v. State*, 6D23-509, 2024 WL 1689215, at *5 (Fla. 6th DCA Apr. 19, 2024). "However, in a criminal proceeding, the trial court's discretion is narrower because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support the theory and the theory is recognized as valid under Florida law." *Vila*, 74 So. 3d at 1112; *see also Espichan*, 391 So. 3d at 656-57; *Gonzalez*, 2024 WL 1689215, at *5 ("[I]n a criminal proceeding, the trial court's discretion is limited by the defendant's right to have the jury instructed on any valid theory of defense supported by record evidence." (quoting *Cliff Berry, Inc. v. State*, 116 So. 3d 394, 406 (Fla. 3d DCA 2012))).

"The trial court should not weigh the evidence when determining whether to give the requested instruction." *Spurgeon v. State*, 114 So. 3d 1042, 1047 (Fla. 5th DCA 2013). "The jury—not the trial judge—decides the weight of the evidence." *Id.*; *see also Vila*, 74 So. 3d at 1112 ("In determining whether to give a requested instruction, the trial court should consider the evidence presented without weighing

the evidence, as the latter is a task for the jury."); *Gonzalez*, 2024 WL 1689215, at *5 ("In determining whether to give the requested instruction, the trial court should consider the evidence in the main case without weighing the evidence." (quoting *Rockerman v. State*, 773 So. 2d 602, 603 (Fla. 1st DCA 2000))). "A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is *any* evidence to support it, no matter how weak or flimsy." *Elder v. State*, 296 So. 3d 440, 444 (Fla. 4th DCA 2020) (quoting *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006) (emphasis in original)); *Espichan*, 391 So. 3d at 657; *Gonzalez*, 2024 WL 1689215, at *5 ("A defendant is entitled to a jury instruction on his theory of the case if there is *any* evidence to support it, no matter how flimsy that evidence might be." (quoting *Wright v. State*, 705 So. 2d 102, 104 (Fla. 4th DCA 1998) (emphasis in original) (internal quotations, citations omitted))); *Johnson v. State*, 789 So. 2d 1071, 1072 (Fla. 1st DCA 2001) ("It is axiomatic that a defendant is entitled to have the jury instructed on the rules of law applicable to his or her theory of defense if there is any evidence to support the instruction."); *Langston v. State*, 789 So. 2d 1024, 1029 (Fla. 1st DCA 2001) ("[O]nce *any* trial evidence is presented to support an accused's theory of defense, the issue becomes a jury question, and the defendant has a right to a jury instruction." (emphasis in original)). "[I]t is enough if the defense is *suggested* by the evidence presented. However disdainful the trial judge may feel about the merits of the

11

defense from a factual standpoint is beside the point." *Elder*, 296 So. 3d at 444 (emphasis in original) (internal quotations, citations omitted); *Chavers v. State*, 901 So. 2d 409, 410 (Fla. 1st DCA 2005); *Johnson*, 789 So. 2d at 1072 (Fla. 1st DCA 2001) ("The evidence need not be convincing to the trial judge before the instruction can be submitted to the jury, as it suffices that the defense is 'suggested' by the testimony. However disdainful the trial judge may feel about the merits of the defense from a factual standpoint is beside the point.").

In the specific context of self-defense, Florida's courts have repeatedly recognized that "[t]he question of self-defense is one of fact, and is one for the jury to decide where the facts are disputed." *Vila*, 74 So. 3d at 1112 (quoting *Dias v. State*, 812 So. 2d 487, 491 (Fla. 4th DCA 2002)); *see also Gonzalez*, 2024 WL 1689215, at *5; *Radler v. State*, 290 So. 3d 87, 91 (Fla. 4th DCA 2020); *Spurgeon*, 114 So. 3d at 1047. "If there is any evidence to support a theory of self-defense, the trial court should give the requested instruction however flimsy the evidence is which supports that theory or however weak or improbable the testimony may have been." *Wagers v. State*, 199 So. 3d 1116, 1117 (Fla. 5th DCA 2016) (quoting *Arthur v. State*, 717 So. 2d 193, 194 (Fla. 5th DCA 1998) (internal quotations, alterations omitted)); *see also Espichan*, 391 So. 3d at 657 ("[W]e recently stressed the importance of giving a defendant's requested instruction on self-defense where there is any evidence to support the instruction, no matter how slight."); *Sipple v. State*,

12

972 So. 2d 912, 915 (Fla. 5th DCA 2007) ("As long as there is any evidence of self-defense presented by the defendant, the instruction is warranted."); *Taylor v. State*, 410 So. 2d 1358, 1359 (Fla. 1st DCA 1982) ("A defendant is entitled to his requested self-defense instruction regardless of how weak or improbable his testimony may have been with respect to the circumstances leading up to the battery."); *Wright*, 705 So. 2d at 104 ("[I]t is not the *quantum* or the *quality* of the proof as to self-defense that determines the requirement for giving the charge. If *any* evidence of a substantial character is adduced . . . the element of self-defense becomes an issue, and the jury, as the trier of the facts, should be duly charged as to the law thereon, because it is the jury's function to determine that issue." (quoting *Kilgore v. State*, 271 So. 2d 148, 152 (Fla. 2d DCA 1972)) (emphasis in original)); *Radler*, 290 So. 3d at 91-92 (holding that even if there was no evidence of an overt act which could reasonably have caused the defendant to fear that he would be subject to great bodily harm, the combination of activities observed by the defendant prior to his use of deadly force could provide sufficient evidence that the defendant reasonably believed that he was in danger of great bodily harm such that the defendant was entitled to a jury instruction on self-defense). "Where evidence presented at trial supports an instruction on self-defense (use of deadly force as well as non-deadly force), it is error not to give it." *Curington v. State*, 704 So. 2d 1137, 1140 (Fla. 5th DCA 1998).

Additionally, in assessing whether there is any evidence to support a theory of self-defense, no particular type of evidence is required. "[A] defendant is not required to testify at trial to receive a jury instruction on self-defense." *Spurgeon*, 114 So. 3d at 1047; *see also Gonzalez*, 2024 WL 1689215, at *5; *Sipple*, 972 So. 2d at 916; *Wright*, 705 So. 2d at 104 ("To raise self-defense, a defendant does not have to testify directly about his intent behind an act occurring in the past, or that he made a conscious decision to defend himself in a certain way."). "A defendant's statements admitted into evidence at trial may be sufficient evidence for a self-defense instruction. The cross-examination of State witnesses can also support a claim of self-defense." *Spurgeon*, 114 So. 3d at 1047; *see also Jefferson v. State*, 264 So. 3d 1019, 1028 (Fla. 2d DCA 2018). "Finally, if a jury can reasonably infer from circumstantial evidence presented at trial that the defendant had the state of mind necessary for self-defense, then the defendant is entitled to a jury instruction on self-defense." *Spurgeon*, 114 So. 3d at 1047 (citing *Johnson v. State*, 634 So. 2d 1144, 1145 (Fla. 4th DCA 1994)); *see also Gonzalez*, 2024 WL 1689215, at *5; *Jefferson*, 264 So. 3d at 1028; *Montijo v. State*, 61 So. 3d 424, 427 (Fla. 5th DCA 2011) (justifiable use of deadly force instruction based on aggravated battery was merited where victim was a large individual who followed defendant to restaurant parking lot after road rage incident and was aggressive during the confrontation); *Priestley v. State*, 537 So. 2d 690, 691 (Fla. 2d DCA 1989) (noting trial court's decision to

give justifiable use of deadly force instruction based on attempted aggravated battery where victim, who was younger and physically fit, knocked defendant down and repeatedly hit defendant while on top of him).

In this case, as stated above, the portion of Standard Jury Instruction 3.6(f) requested by Smith was as follows:

> Smith was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent great bodily harm to himself. If Smith was in a place he had a right to be, then he had no duty to retreat and had the right to stand his ground.

As explained in the notes contained in the standard jury instruction, this portion of the instruction implements Section 776.012(2), Florida Statutes (2014), entitled, "Use or threatened use of force in defense of person," which states:

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

Thus, the portion of Instruction 3.6(f) requested by Smith is the section of the instruction that provides the primary governing standard for the justifiable use of deadly force in defense of oneself – which was Smith's sole defense in the case. Applying the law set forth above, Smith was entitled to the instruction.

15

### (a) The First Sentence of the Requested Instruction

As to the first sentence of the requested instruction, there was evidence from which a jury could determine that a reasonable doubt existed as to whether Smith reasonably believed that the use of deadly force was necessary to prevent imminent great bodily harm to himself. *See Sipple*, 972 So. 2d at 915 ("When self-defense is asserted in a criminal case, the defendant only has the burden of presenting some evidence to establish a prima facie case that the killing was justified. The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense."); *Alexander v. State*, 121 So. 3d 1185, 1188 (Fla. 1st DCA 2013) ("The defendant's burden is only to raise a reasonable doubt concerning self-defense."); *E.L.F. v. State*, 33 So. 3d 760, 763 (Fla. 4th DCA 2010) ("[W]hen defendant presents a prima facie case of self-defense, [the State] has the burden of proving defendant did not act in self-defense beyond a reasonable doubt."); *see also Fowler v. State*, 921 So. 2d 708, 711 (Fla. 2d DCA 2006); *Murray v. State*, 937 So. 2d 277, 279 (Fla. 4th DCA 2006) ("[I]f [the defendant] wanted his self-defense to be considered, it was necessary to present evidence that his justification might be true. It would then be up to the jury to decide whether his evidence produced a reasonable doubt about his claim of self-defense."); *Montijo*, 61 So. 3d at 427 ("When a defendant claims self-defense, the State maintains the burden of proving the defendant committed the crime and did not act in self-defense. The burden never shifts to the defendant to

16

prove self-defense beyond a reasonable doubt. Rather, he must simply present enough evidence to support giving the instruction." (internal citations omitted)).

As detailed above, both Moore and Delgado were substantially bigger and stronger than Smith and both had been drinking. There was also testimony that: (1) someone shoved Smith out of the patio door and onto the ground; (2) the group of four (Benjamin, Moore, Delgado and Amelia) formed a half-circle around Smith with Delgado about two steps away from Smith and Benjamin closer; (3) Benjamin and Moore together moved towards Smith; (4) Moore rushed towards Smith; (5) Moore lunged at Smith and tried to grab Smith; (6) Benjamin and Amelia had to hold Moore back; and (7) Smith appeared afraid of Moore.

In applying Florida's self-defense statutes, Florida courts have made clear that while the reasonableness of a person's belief that deadly force was necessary to prevent imminent death or great bodily harm is an objective standard, whether the person's belief was objectively reasonable must be determined from the point of view of the person at the time the person used the deadly force. *See Oquendo v. State*, 357 So. 3d 214, 217 (Fla. 2d DCA 2023) ("The conduct of a person acting in self defense is measured by an objective standard, but the standard must be applied to the facts and circumstances as they appeared at the time of the altercation to the one acting in self defense." (quoting *Shreiteh v. State*, 987 So. 2d 761, 763 (Fla. 4th DCA 2008))); *State v. Quevedo*, 357 So. 3d 1249, 1253 (Fla. 3d DCA 2023) ("Thus the

17

objective standard of what is reasonable must be measured in light of the facts and circumstances as they appeared and were known to the individual defendant."); *Cummings v. State*, 310 So. 3d 155, 158 (Fla. 2d DCA 2021) ("The question under this objective evaluation of a defendant's conduct is whether, based on the circumstances as they appeared to the defendant at the time of the altercation, a reasonable and prudent person in the same position as the defendant would believe that the use of deadly force is necessary to prevent imminent death or great bodily harm or the imminent commission of a forcible felony." (quoting *Bouie v. State*, 292 So. 3d 471, 481 (Fla. 2d DCA 2020))); *Viera v. State*, 163 So. 3d 602, 604 (Fla. 3d DCA 2015) ("[T]he objective standard . . . requires the court to determine whether, based on circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant."); *Mobley v. State*, 132 So. 3d 1160, 1164-65 (Fla. 3d DCA 2014) ("That standard requires the court to determine whether, based on circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant."); *Price v. Gray's Guard Serv., Inc.*, 298 So. 2d 461, 464 (Fla. 1st DCA 1974) ("The conduct of a person acting in self defense is measured by an objective standard, but the standard must be applied to the facts and

18

circumstances as they appeared at the time of the altercation to the one acting in self defense. A person acting in self defense is not held to the same course of conduct which might have been expected had he been afforded an opportunity of cool thought as to possibilities, probabilities and alternatives.").

Additionally, assessing the reasonableness of a defendant's belief from the defendant's point of view includes taking into account the relative physical differences between the defendant and the person or persons by whom the defendant felt threatened. *See Gonzalez*, 2024 WL 1689215, at \*6 n.6; Fla. Std. Jury Instr. (Crim) 3.6(f) ("In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of (defendant) and (victim)."); *State v. Floyd*, 186 So. 3d 1013, 1020-21 (Fla. 2016) (holding that Standard Jury Instruction 3.6(f) correctly states the law regarding the justifiable use of deadly force).

Thus, in determining whether a reasonable doubt existed as to whether Smith reasonably believed that the use of deadly force was necessary to prevent imminent great bodily harm to himself, the jury would have been required to assess whether Smith's belief was reasonable from Smith's point of view at the time that he used deadly force, including the fact that he was surrounded by men bigger than him who had been drinking, with two men moving towards him, one having already shoved him to the ground, and one lunging at him and trying to grab him as he was

surrounded by the four people.[7]  While the evidence for Smith's self-defense claim may have been weak, and the jury may still have convicted Smith if it had been properly instructed, there was at least some evidence supporting Smith's claim that he reasonably believed that his use of deadly force was necessary to prevent imminent great bodily harm to himself.  For this reason, the trial court erred by denying Smith's request to instruct the jury that "Smith was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent great bodily harm to himself."

### (b) The Second Sentence of the Requested Instruction – Stand Your Ground

As to the second sentence of the instruction requested by Smith – the "Stand Your Ground" instruction – there was likewise at least some evidence to suggest that Smith was in a place he had a right to be.  As defense counsel argued at the hearing, there was evidence presented at trial that after the group initially told Smith that he was no longer welcome on Ms. Stanley's property, after Smith returned Moore stated to Smith, "Yes, okay, come get your stuff and then leave."  The rest of the group then acquiesced and assisted Smith in retrieving his belongings.  If Smith had valid, express or implied permission to be on the property at the time he used deadly force

---

[7] As discussed below, the prior threat made against Smith should also have been admissible and would have provided additional evidence in support of Smith's self-defense theory.

in self-defense, then he was in a place where he had a right to be. *See Bishop v. First Nat. Bank of Fla., Inc.*, 609 So. 2d 722, 724 (Fla. 5th DCA 1992) (stating that an invitation for invitees, such as social guests, to be on a premises may be by express invitation or reasonably implied invitation; and that an "uninvited licensee" is a person who "is neither an invitee nor a trespasser, but rather, a legal status in between whose presence is neither sought nor forbidden, but merely permitted or tolerated by the landowner."); *Devlin v. The Phoenix, Inc.*, 471 So. 2d 93, 95 (Fla. 5th DCA 1985) ("A 'license' is defined to be an authority to do a particular act, or series of acts, upon another's land without possessing any estate therein. . . .The distinctive characteristic of a license is that it may always be made by parol and that it is, in its very nature, necessarily revocable at will."). Even assuming Smith's permission to be on Ms. Stanley's property was initially revoked, the evidence was sufficient for a jury to find reasonable doubt as to whether Smith was later given express or implied permission to once again be on the property.[8] For this reason, the trial court erred by denying Smith's request to give the jury the Stand Your Ground instruction.

---

[8] While the defense did not raise this issue at trial, there was also nothing in the record to establish that Amelia, Benjamin, Moore or Delgado had the authority to eject Smith from Ms. Stanley's property initially. The evidence at trial established that Ms. Stanley owned the property on which the incident took place, not Amelia, Benjamin, Delgado or Moore. There was also evidence that Smith had at least implied permission to enter the property, as he had regularly visited the property for social purposes for years without objection. If Ms. Stanley gave either express or implied permission for Smith to be on her property, neither Amelia, Benjamin,

## II. The Hearsay Ruling

"Admissibility of evidence is within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appellate review unless there is an abuse of discretion." *Joseph v. State*, 336 So. 3d 218, 234 (Fla. 2022) (quoting *Tundidor v. State*, 221 So. 3d 587, 598 (Fla. 2017)). "However, the question of whether a statement is hearsay is a matter of law and is subject to de novo review on appeal." *Id*.

Hearsay is defined in Section 90.801(1)(b), Florida Statutes (2023), as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[9] "Thus, if the statement is offered for the truth of the facts contained in the statement, then the statement is hearsay and must fall within one of the recognized hearsay exceptions outlined in section 90.803 to be admitted into evidence." *Penalver v. State*, 926 So. 2d 1118, 1132 (Fla. 2006). "However, if the statement is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if

---

Delgado or Moore (as non-owners of the property), had any legal authority to revoke that permission absent some grant of authority from Ms. Stanley to do so. There was no evidence of any such grant of authority presented at trial.

[9] At the time of the trial below, this definition was contained in Section 90.801(1)(c) rather than Section 90.801(1)(b). The subsection number for the definition of hearsay was changed pursuant to an amendment to Section 90.801 that took effect on July 4, 2023. The definition of hearsay was not altered by the amendment.

relevant to a material issue in the case." *Id*.; *see also Jenkins v. State*, 189 So. 3d 866, 869 (Fla. 4th DCA 2015) ("If the statement is offered for some purpose other than its truth, it is not hearsay.").

"The Supreme Court has recognized that a statement may be offered to prove a variety of things besides its truth." *Eugene v. State*, 53 So. 3d 1104, 1109 (Fla. 4th DCA 2011) (quoting *Foster v. State*, 778 So. 2d 906, 914-15 (Fla. 2000) (internal quotations omitted)). A recognized, non-hearsay use of an out-of-court statement is to show the "effect on the listener." *Blackwood v. State*, 777 So. 2d 399, 407 (Fla. 2000) (holding that an out-of-court statement was not hearsay because it was offered to show the effect that the statement had on the person that heard the statement, rather than for the truth of the matter asserted in the statement); *Breedlove v. State*, 413 So. 2d 1, 7 (Fla. 1982) ("The court properly admitted the detectives' testimony about [another person's out-of-court statement] because it came in to show the effect on [the listener] rather than for the truth of those comments.").

The effect on the listener may include the listener's knowledge that the statement was made, if that is a relevant issue. *See Blackwood*, 777 So. 2d at 407; *Koon v. State*, 513 So. 2d 1253 (Fla. 1987) (out-of-court statement is admissible to show knowledge on the part of the listener that the statement was made if this knowledge is relevant), *cert. denied*, 485 U.S. 943 (1988). The effect on the listener may also include the effect on the listener's state of mind. *Jenkins*, 189 So. 3d at 869

23

("When a statement is offered to prove what a person thought after the person heard the statement, it is being offered to prove the person's state of mind and is not hearsay."); *Alfaro v. State*, 837 So. 2d 429, 432 (Fla. 4th DCA 2002) (holding that excluded testimony was not hearsay as it was offered to show that the defendant had a good faith belief that the van was not stolen and belonged to the passenger); *Duncan v. State*, 616 So. 2d 140, 141-42 (Fla. 1st DCA 1993) (testimony of seller of stolen tire rims that he told defendant they were salvaged should have been admissible to show effect on defendant in dispelling his suspicion that they were stolen).

In the context of self-defense, a prior threat made to a defendant before the defendant used force is not hearsay when offered to show that the defendant feared that he or she was in danger of death or great bodily harm. *Strachan v. State*, 279 So. 3d 1231, 1238 (Fla. 4th DCA 2019). Even if the statement is ambiguous and the trial court does not understand the statement to be a threat, "that [i]s a question for the jury, not the trial court, in determining the credibility of the defendant's self-defense claim." *Id.*; *see also Hawthorne v. State*, 377 So. 2d 780, 787 (Fla. 1st DCA 1979) ("The final issue concerns defendant's efforts to elicit testimony as to the deceased's threats and acts of violence toward the defendant, her children and third persons. This evidence was improperly disallowed by the trial court. Fear and apprehension in the mind of the defendant, and the reasonableness of that fear and

24

apprehension, were questions for the jury to determine as bearing on the defendant's claim of self defense.").

In this case, the out-of-court statement which Smith sought to introduce through Delgado – that either Moore or Benjamin shouted at Smith, "I'm going to beat you up" – was not offered for the truth of the matter asserted in the statement, which was that the speaker of the statement was going to beat Smith up. Rather, the statement was offered to prove its effect on Smith and Smith's state of mind, i.e., that it caused Smith to fear that he was in danger of being caused great bodily harm. Because this out-of-court statement was not offered for the truth of the matter asserted in the statement, it was not hearsay and the trial court erred by excluding it.

## III. Harmless Error

The Florida Supreme Court "has explained that the harmless error test places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Penalver*, 926 So. 2d at 1137 (quoting *State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986) (internal quotations omitted)).

"The harmless error analysis is applicable to jury instructions." *Gonzalez*, 2024 WL 1689215, at *6 (quoting *Vila*, 74 So. 3d at 1113). However, in its answer brief, while the State argued that the trial court did not err in denying Smith's

25

requested jury instruction, the State made no attempt to establish that the trial court's error, if one occurred, did not contribute to the verdict. Because the State made no attempt to establish that the trial court's error in denying the jury instruction did not contribute to the verdict in this case, the State has not met its burden under the harmless error test to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict. *See Middlebrook v. State*, 403 So. 2d 508, 517 (Fla. 6th DCA 2025) (holding that the State did not meet its burden under the harmless error test where the State made no attempt to establish that the trial court's error did not contribute to the verdict); *State v. Lopez*, 974 So. 2d 340, 351 (Fla. 2008) (finding error not harmless because the State did not meet its burden to show that the error was harmless); *Gary v. State*, 330 So. 3d 118, 122 (Fla. 2d DCA 2021) ("The State made no argument whatsoever to support its harmless error claim, so it has not met its burden."); *St. Pierre v. State*, 228 So. 3d 583, 588 (Fla. 4th DCA 2017) ("[T]he state has not met its burden to show that the failure to properly instruct the jury on self-defense for the burglary charge was harmless error."); *Bartlett v. State*, 993 So. 2d 157, 167 (Fla. 1st DCA 2008) ("Because the State has not met its burden under *DiGuilio* to show harmless error, we are constrained to REVERSE the conviction and sentence and REMAND for a new trial."). Moreover, this court has previously held that "[n]otwithstanding the remoteness that a different result may occur, . . . the failure to give a standard jury instruction is reversible error when the omitted

26

standard jury instruction goes to the heart of the defendant's case." *Gonzalez*, 2024 WL 1689215, at \*6 (quoting *Arboleda v. State*, 645 So. 2d 48, 50 (Fla. 3d DCA 1994) (internal quotations, alterations omitted)); *see also Espichan*, 391 So. 3d at 658.

As to the trial court's error regarding the hearsay ruling, the State argues that the error was harmless because Smith was able to present other evidence in support of his theory of self-defense. However, the statement excluded by the trial court was the only evidence of a direct verbal threat of physical harm made to Smith before he used deadly force. The threat also came from one of the witnesses who testified at trial and, therefore, hearing the threat may have impacted the jury's assessment of a witness's credibility. Additionally, the State took advantage of the precluded testimony in its closing argument and argued to the jury that there had been no testimony that Smith was going to be beaten. For these reasons, we cannot find beyond a reasonable doubt that the trial court's error in excluding the statement did not contribute to the verdict.

## Conclusion

The trial court erred when it denied Smith's requested jury instruction on self-defense and when it denied Smith's attempt to offer evidence of a threat that was made against him prior to his use of force against the alleged victim. Smith's

27

conviction is reversed, and this case is remanded to the trial court to conduct a new trial.

REVERSED and REMANDED.

GANNAM, J., concurs.
WHITE, J., concurs specially, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

WHITE, J., concurring specially.

I agree with the majority's conclusion that the trial court erred by denying Smith's requested self-defense jury instruction, the error was not harmless, and we should reverse and remand for a new trial. I write separately to point out issues relating to the Stand Your Ground instruction that should be resolved at the new trial, respond to footnote 8 of the majority opinion, discuss hearsay rulings not addressed by the majority, and identify a mistake in the majority's harmless error analysis.

**Stand Your Ground Issues at the New Trial**

Smith argues that the trial court improperly weighed the evidence and made factual determinations when it denied the request for the Stand Your Ground instruction. The majority agrees and states that "*[i]f* Smith had valid, express or implied permission to be on the property at the time he used deadly force in self-defense, *then* he was in a place where he had a right to be." (emphasis added). The majority does not, however, determine whether the necessary condition existed or expound on how to make that determination.

Therefore, that determination should be made at the new trial. For the benefit of the parties and the trial court, I will identify a few issues that should be resolved to properly determine whether Smith had valid, express or implied permission to be on the property at the time he used deadly force: whether Delgado or Moore had the

29

authority to give Smith valid, express or implied permission to be back on the property;[1] whether Amelia or Benjamin gave Smith express or implied permission to be back;[2] whether any permission to be back was expressly or implicitly revoked before Smith used deadly force;[3] and whether any permission to be back did not allow Smith to stand his ground or was invalidated because Smith exceeded its scope.[4] Of course, nothing prevents the parties or the trial court from addressing any other important issues involving the interplay between the Stand Your Ground

---

[1] There was no evidence of such authority admitted at trial.

[2] The resolution of that issue will require findings regarding Amelia's and Benjamin's conduct and statements, and the surrounding circumstances.

[3] *See supra* note 2. *See, e.g.*, *Briley v. Winter*, 149 So. 602, 602 (Fla. 1933) ("The agreement . . . constituted a mere license . . . and, as that license was oral and without consideration, it had no legal binding effect, and could be revoked at will."); *Devlin v. The Phoenix, Inc.*, 471 So. 2d 93, 95 (Fla. 5th DCA 1985) ("A license, whether express or implied, is not a right but is a personal privilege . . . necessarily revocable at will.").

[4] "A license allows occupation of a property *only so far as it is necessary to do the licensed act and no further*. Where a conditional or restricted consent to enter land is given, there is a privilege to enter *only insofar as the condition or restriction is complied with*." 20 Fla. Jur. 2d *Easements & Licenses in Real Property* § 82 (2025) (emphasis added) (footnotes omitted); *see also Florida v. Jardines*, 569 U.S. 1, 9 (2013) ("The scope of a license—express or implied—*is limited not only to a particular area but also to a specific purpose*." (emphasis added)).

statute[5] and centuries-old property rights law.[6]

The notes to Instruction 3.6(f) specify that "[i]f the evidence is in dispute about . . . whether the defendant had a right to be there . . . the trial judge must craft a special instruction . . . ." *In re Standard Jury Instructions in Criminal Cases– Report 2019-01*, 285 So. 3d 1248, 1254 (Fla. 2019). Also, the trial court must determine whether there is any evidence to support the theory of defense, and whether that the theory is valid under Florida law. *See Espichan v. State*, 391 So. 3d 653, 656-57 (Fla. 6th DCA 2024).

---

[5] "A person . . . does not have a duty to retreat and has the right to stand his or her ground if the person . . . is in a place where he or she has a right to be." § 776.012(2), Fla. Stat. (2014). On appeal, neither party conducts any analysis, textualist or otherwise, of that language.

[6] *See, e.g.*, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149-50 (2021) ("The right to exclude is 'one of the most treasured' rights of property ownership. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). According to Blackstone, the very idea of property entails 'that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe.' 2 W. Blackstone, Commentaries on the Laws of England 2 (1766)."); *Jardines*, 569 U.S. at 7-8 ("*Entick v. Carrington*, 2 Wils. K.B. 275, 95 Eng. Rep. 807 (K.B. 1765), a case 'undoubtedly familiar' to 'every American statesman' at the time of the Founding, *Boyd v. United States*, 116 U.S. 616, 626, 6 S.Ct. 524, 29 L.Ed. 746 (1886), states the general rule clearly: '[O]ur law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave.' 2 Wils. K.B., at 291, 95 Eng. Rep., at 817."); *Harris v. Baden*, 17 So. 2d 608, 612 (Fla. 1944) ("At the common law, every entry upon another's land, except by consent, was deemed a trespass for which satisfaction would lie. Every man's land was considered, as a matter of law, to be enclosed and set apart from his neighbor's, either by a visible and material fence or by an ideal invisible boundary existing only in contemplation of the law.").

The parties agree that Smith left after Benjamin initially told Smith that he was no longer welcome on the property. The parties also agree that Smith returned, and Moore stated to Smith, "Yes, okay, come get your stuff and then leave. You're not welcome here." The parties disagree about what happened thereafter. At the new trial, each party may present arguments and evidence on the Stand Your Ground issues, and the trial court will be able to address any jury instructions requested by either party.

**Response to Footnote 8**

The majority's footnote 8[7] is built on a flawed foundation. It claims that "nothing in the record" shows that any of the group could "eject" Smith from the property. Not so.

Amelia testified that she and Ms. Stanley resided at the property. She said that she had known Smith since about age 4, and she turned 21 around the date of the incident. She also stated that Smith visited her home many times, and "[e]specially in the younger years," he would jump the fence and come to the house. Benjamin testified that he lived in the house until age 16, usually came back once a year, and was staying there overnight on the date of the incident. He said that he had known Smith since about 3 or 4 years old, and they "pretty much grew up

---

[7] That footnote is dicta because the majority expressly acknowledges that Smith "did not raise this issue at trial," and, therefore, does not decide the issue.

32

together." He also stated that, on the date of the incident, Smith "hopped over the fence in the back garden and came onto the porch, the screened area."

The evidence showed that Ms. Stanley went to bed before Smith arrived and no evidence showed that she left her bedroom until after the shooting. In fact, there was no evidence that Ms. Stanley was aware that Smith had ever jumped the fence to come on the property, had ever communicated with Smith, or had ever seen him on the property. No one testified that Smith said that Ms. Stanley had given him permission to be on the property. Rather, the evidence showed that Smith obeyed Benjamin's directive to leave and asked for permission to "grab [his] stuff" when he returned.

The record is devoid of evidence showing that Ms. Stanley ever gave Smith express or implied permission to be on the property. There is one permissible conclusion from the evidence—any express or implied permission to be on the property that Smith had prior to date of the incident was given by Amelia and Benjamin. So of course they could revoke any such permission.[8] Furthermore, the

---

[8] The majority's footnote 8 cites no legal authority supporting the bald assertion that a permanent or temporary resident (Amelia or Benjamin) cannot eject a visitor (Smith) when the owner (Ms. Stanley) is not present.

33

hypothetical[9] in the majority's footnote 8 is of no moment because Smith's entitlement to a jury instruction must be based on admitted evidence, not judicial figments. *See Espichan*, 391 So. 3d at 656-57.

### Unaddressed Hearsay Rulings

Smith's argument on appeal is devoted to showing that evidence of the "threat" itself (i.e., Moore's or Benjamin's statement "I'm going to beat you up") was not hearsay. The majority correctly concludes that the "threat" itself was not hearsay because it "was offered to prove its effect on Smith and Smith's state of mind." However, the trial court made other hearsay rulings.

The trial court also concluded that the evidence offered to prove that the "threat" was made (i.e., Delgado's testimony at the motion to dismiss hearing in December 2021 that he heard Moore or Benjamin make the "threat") was hearsay because Delgado repeatedly testified at the trial in February 2023 that he did not recall the "threat" being made. As a result, the trial court determined that Smith never "crossed [the] threshold to get into" the "threat" itself.

On appeal, Smith mounts no challenge against those rulings, so the majority does not address them. Those rulings were correct. *See* § 90.801(1)(b), Fla. Stat.

---

[9] It strains credulity to suggest that Ms. Stanley may have given Smith permission to be on the property to visit her children but prohibited her children from revoking that permission.

(2023). At the new trial, the parties and the trial court may need to address those hearsay issues if they arise again.

## Mistake in Harmless Error Analysis

The State does have the burden to demonstrate harmless error by proving beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict. *See Jackson v. State*, 107 So. 3d 328, 342 (Fla. 2012) (citing *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986)). The majority apparently believes that we need not determine harmless error here "[b]ecause the State made no attempt to establish that the trial court's error in denying the jury instruction did not contribute to the verdict in this case." The majority is mistaken.

We have "a duty to determine harmless error 'regardless of any lack of argument on the issue by the state.'" *Jackson*, 107 So. 3d at 342 (quoting *Knowles v. State*, 848 So. 2d 1055, 1057 (Fla. 2003) (quoting *Goodwin v. State*, 751 So. 2d 537, 545 (Fla. 1999))). In a similar case, this Court performed a harmless error analysis and found that the error was not harmless. *See Espichan*, 391 So. 3d at 657-58 (finding that the trial court erred in denying requested self-defense jury instruction, analyzing for harmless error, and concluding that the error was not harmless). I have analyzed for harmless error here and find that the trial court's erroneous denial of Smith's requested self-defense jury instruction was not harmless

35

beyond a reasonable doubt. Therefore, Smith's judgment and sentence should be reversed, and this case should be remanded for a new trial.

_____

Blair Allen, Public Defender, and Andrea Flynn Mogensen, Special Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Taylor A. Schell, Assistant Attorney General, Tampa, for Appellee.